Gerald Grunsfeld, Esq.
Lazar, Grunsfeld Elnadav, LLP
1795 Coney Island Avenue
Brooklyn, NY 11230
Telephone: (718) 947-7476
*Attorneys for Plaintiffs*


**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SIMCHA FELDMAN, YECHIEL SHUKRON, SHALOM KOLDETZKY, ARON BENISHU, ISRAEL HODER, MEIR FOGEL, RAPHAEL ARIEH, RACHAMIM BERACHA, TZVI LEFKOVITZ, SHLOMO KORITZ, TZVI ANSBACHER, RUCHAMA TOLEDANO, RAPHAEL BITAN, NAOR AMAR, ISRAEL BEN-EZRA, ARYEH LEVI, ELCHANAN ELMISHALI, and MEIR EDELSHTEIN

                                        Plaintiffs,

                    -against-

YECHEZKEL STRULOVITCH, CS CONSTRUCTION GROUP LLC, 945 PARK PL LLC, 1078 DEKALB LLC, 74 VAN BUREN LLC, 454 CENTRAL AVENUE LLC, 980 ATLANTIC HOLDINGS LLC, 720 LIVONIA DEVELOPMENT LLC, PENN CONDOMINIUM LLC, THROOP HOME, LLC, EIGHTEEN PROPERTIES LLC, THE BUSHWICK PARTNERS LLC, BROOKLYN VENTURES LLC, THE HOWARD DAY HOUSE LLC, 196 ALBANY HOLDINGS L.P., CSN PARTNERS LP, KNICKERBOCKER LOFTS LLC, 1301 PUTNAM LLC, 741 LEXINGTON LLC, 296 COOPER LLC, WILLTROUT REALTY LLC, STAGG STUDIOS LLC, FIRST AVENUE REALTY HOLDINGS L.P., CSY HOLDINGS LLC, CAS MANAGEMENT COMPANY BAYSHORE, INC., 31 BROOKLYN LLC, 1035 FLUSHING AVE LLC, VICTORY BLVD ASSOCIATE LLC, SOI GROUP LLC, 945 WILLOUGHBY HOLDINGS LLC, 119 HOLDINGS LLC, WALLACE HOLDINGS LLC, 1642 EQUITIES LLC, BNH PROPERTIES LLC, HERMAN GREENFELD as trustee of GIVAS OLIM TRUST, MENDEL BRACH as trustee of GIVAS OLIM TRUST, TOMPKINS 420 REALTY LLC, WILLOUGHBY EQUITIES LLC,

(JURY DEMANDED)


Index No.

**COMPLAINT**

186 LENOX LLC, 400 SOUTH 2ND STREET REALTIES L.P., WYKOFF SP LLC, 1428 FULTON ST LLC, PENN & MARCY LLC, 420 TOMPKINS, LLC, 599-601 WILLOUGHBY LLC, CS YH CONDOS LLC, LENOX 186 HOLDINGS LLC, LENOX 186 REALTY LLC, 400 SOUTH 2ND STREET HOLDINGS L.P., R.P.S. PROPERTIES LLC, FULTON STREET HOLDNGS LLC, 908 BERGEN STREET LLC, 901 BUSHWICK AVENUE LLC, GATES EQUITY HOLDINGS LLC, 853 LEXINGTON LLC, 348 ST. NICHOLAS LLC, 762 WILLOUGHBY LLC, 855 DEKALB AVENUE LLC, THE BRIDGE TOWER LLC, 619 HOLDINGS LLC, GRAND SUITES LLC, CATALPA DEVELOPMENT, LLC, SLOPE OFFICES LLC, 41-49 SPENCER LLC, 482-484 SENECA LLC, 1217 BEDFORD LLC, 1266 PACIFIC LLC, MYRTLINO HOLDINGS, LLC, 259 BERRY LLC, and 261 BERRY LLC

Defendants.

Plaintiffs, by their attorneys, LAZAR GRUNSFELD ELNADAV LLP, as and for a Complaint, complaining of the Defendants herein allege, upon information and belief, as follows:

## **INTRODUCTION**

1.      Defendant Yechezkel Strulovitch ("Mr. Strulovitch"), deceased non-party Yechiel Oberlander ("Mr. Oberlander"), and other Defendants in this action, conspired and racketeered over the course of several years, in a criminal and fraudulent enterprise, which defrauded Plaintiffs out of many millions of dollars.

2.      Defendants funded their own personal property portfolio by stealing money millions of dollars from Plaintiffs.

3.      Defendants devised various different fraudulent schemes as a means of stealing funds from Plaintiffs.

4.      More specifically, Defendants, directly, and through intermediaries, solicited investment funds from Plaintiffs, promising Plaintiffs that their funds would be used to purchase and develop specific properties ("Joint Venture Properties").

5.      Acting directly, and through Mr. Oberlander, Mr. Strulovitch provided Plaintiffs with fraudulent prospecti for each of the proposed Joint Venture Properties, wherein Mr. Strulovitch deliberately inflated costs of the proposed  property purchase/development  so that  he would be able to misappropriate the extra hundreds of thousands, and sometimes millions, of dollars of Plaintiffs' investment funds for his own use.

6.      Typically, the prospectus specified that the "entrepreneur" (Mr. Strulovitch), would purchase and develop a Joint Venture Property.

7.      The ownership of said Joint Venture Property was to be registered to a holding company LLC (hereafter referred to as a "Holding LLC").

8.      For example, 945 Park Place would be purchased and registered under the ownership of 945 Park Place, LLC.

9.      Each of the prospecti provided that the "entrepreneur" (Mr. Strulovitch), would receive a 55% share of the Holding LLC and the investors would receive a 45% share of the Holding LLC.

10.     Each of the prospecti provided that the investors would first be repaid their investment, after which, the "entrepreneur" (Mr. Strulovitch), would receive 55% of the profits while the investors would receive 45% of the profits.

11.     Mr. Strulovitch and his intermediaries instructed Plaintiffs to wire their investment funds ("Plaintiff Investment Funds") into Mr. Strulovitch personal bank accounts as well as into

accounts he controlled, such as CS CONSTRUCTION GROUP LLC ("CS") bank accounts.

12. Upon information and belief, CS is wholly owned by Mr. Strulovitch.

13. Plaintiffs were informed by Mr. Strulovitch and his intermediaries that once they wired the funds to CS or Mr. Strulovitch's bank accounts, Mr. Strulovitch would transfer those funds into the bank account of the appropriate Holding LLC, from where they would be used to purchase or develop the corresponding Joint Venture Property.

14. Plaintiffs were also informed by Mr. Strulovitch and his intermediaries that if Mr. Strulovitch was outbid and failed to purchase any particular Joint Venture Property, the Plaintiff Investment Funds would be promptly returned to Plaintiffs.

15. For example, a Plaintiff who wanted to invest in the 945 Park Place development, was told to notify Mr. Strulovitch or Mr. Oberlander that the Joint Venture Property he wished to invest in was 945 Park Place, wire an agreed amount of funds to CS or Mr. Strulovitch's bank accounts, at which time, Mr. Strulovitch would transfer those funds to 945 Park Place, LLC's account, from where said funds would be withdrawn to purchase/or develop 945 Park Place.

16. Mr. Strulovitch conspired with Mr. Oberlander, CS, and the Holding LLCs, to commit serial fraud against Plaintiffs and to steal as much money from them as possible by engaging in various property scams outlined below.

17. The Defendants identified in the prior paragraph are collectively referred to hereafter as the "Strulovitch Defendants".

18. Based on Strulovitch-Oberlander's fraudulent representations, Plaintiffs reasonably believed that Plaintiff Investment Funds would be wholly utilized for the purchase and development of the specific Joint Venture Properties agreed to by the parties, and in the amounts set forth in the prospecti.

19. As will be shown, Plaintiffs' expectations were not met because the Strulovitch

Defendants committed serial fraud.

**PARTIES, JURISDICTION and VENUE:**

20.     Plaintiffs are citizens of Israel, France, the United Kingdom, and Austria.

21.     All of the individually named defendants are residents of  New York.

22.     Upon information all of the corporate defendants were formed under New York law, and/or are headquartered in New York.

23.      The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of the parties and the amount in controversy exceeds $75,000.

24.     The Court also has Federal-question subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action asserts a cause of action based on Defendants' violations of 18 U.S.C. § 1962(c), as well as other Federal statutes.

25.     New York county is an appropriate venue for this action because at least one of the properties in question is located in New York County. Specifically, 940 First Avenue, New York, NY.  In addition, upon information and belief, a significant amount of Defendants' fraudulent activity took place in New York county.

26.     Upon information and belief, Defendant Mr. Strulovitch is a resident of Brooklyn, NY, with an address of 223 Rutledge Street, Brooklyn, New York.

27.     Upon information and belief, non-party Mr. Oberlander passed away within the last few months. For this reason, he is not named as a Defendant in this action.

28.     At all times referenced herein, Mr. Oberlander acted with the full knowledge and consent of Mr. Strulovitch, and vice versa.

29.     At all times referenced herein, Mr. Oberlander and Mr. Strulovitch conspired to defraud, racketeer, and cheat and steal from Plaintiffs.

30.     The Strulovitch Defendants conspired to defraud Plaintiffs using at least six different methods of fraud outlined herein.

**FRAUDULENT SCHEME I:               THE PONZI SCHEME**

31.     Because the Strulovitch Defendants were constantly misappropriating Plaintiff Investment Funds, they were constantly in need of new Plaintiff Investment Funds to purchase Joint Venture Properties.

32.     As such, many Plaintiffs who provided Plaintiff Investment Funds for the purchase and development of Joint Venture Property X, found out many years later that the Strulovitch Defendants had used the funds to purchase Joint Venture Property Y.

33.     The Strulovitch Defendants purchased 945 Park Place; 8 Maple Avenue , 1078 Dekalb Avenue; 74 Van Buren Street; 454 Central Avenue;  980 Atlantic Avenue; and 720 Livonia Avenue (all in Brooklyn, New York, except for 8 Maple Avenue), at least in part, with moneys Plaintiffs wired to them that was supposed to have been used to purchase/develop a different Joint Venture Property.

34.     The aforesaid properties are referred to hereafter as the "**SCHEME 1 PROPERTIES**".

35.     Defendants 945 PARK PL LLC, 1078 DEKALB LLC, 74 VAN BUREN LLC, 454 CENTRAL AVENUE LLC, 980 ATLANTIC HOLDINGS LLC, CSY HOLDINGS, LLC,  and 720 LIVONIA DEVELOPMENT LLC, were created by or on behalf of Mr. Strulovitch to act as Holding LLCs and owners of the SCHEME 1 PROPERTIES.

36.     These Holding LLCs are referred to hereafter as the "SCHEME 1 COMPANIES".

37.     Upon information and belief, Mr. Strulovitch controls all of the SCHEME 1 COMPANIES.

38.     The claims against Mr. Strulovitch individually are proper because he was not acting within the scope of his role as Managing Member of the Scheme 1 Companies when he improperly intermingled Plaintiff Investment Funds.

39.     The claims against Mr. Strulovitch individually are proper because he was not acting within the scope of his role as Managing Member of the Scheme 1 Companies when he defrauded Plaintiffs by  using Plaintiff Investment Funds intended for Joint Venture Property X, on Joint Venture Property Y.

**FRAUDULENT SCHEME II:        MR. STRULOVITCH'S  MISAPPROPRIATION OF PLAINTIFF  INVESTMENT FUNDS  FOR USE ON PERSONAL REAL ESTATE PROJECTS**

40.     Instead of using Plaintiff Investment Funds to purchase and develop the Joint Venture Properties, as the Strulovitch Defendants had promised to Plaintiffs, Mr. Strulovitch diverted a significant percentage of Plaintiff Investment Funds to pay for the purchase, construction, development, expansion, rehabilitation, and mortgage payments, of entirely unrelated properties, so as to build his own personal property portfolio.

41.     The properties that Mr. Strulovitch fraudulently financed in this manner include, 217 Penn Street, Brooklyn, New York; 12 Throop Avenue, Unit 1G, Brooklyn, New York; 255 18th Street, Brooklyn, New York; 1098-1104 Bushwick Ave, Brooklyn, New York; 284 Sumpter Street, Brooklyn, New York; 16 Howard Avenue, Brooklyn, New York; 196 Albany Avenue, Brooklyn, New York; 1173 Bergen Street, Brooklyn, New York; 783 Knickerbocker Avenue, Brooklyn, New York; 741 Lexington Avenue, Brooklyn, New York; 296 Cooper Street, Brooklyn, New York; 965 Willoughby Avenue, Brooklyn, New York; 361 Stagg Street, Brooklyn, New York; 940 1st Avenue, New York, New York; 31-43 Brooklyn, Avenue, Brooklyn, New York; 1035 Flushing Avenue, Brooklyn, New York; 2212 Victory Boulevard, Staten Island, New York; 945 Willoughby Avenue, Brooklyn, New York, 119 McKibbin Street, Brooklyn, New York, 2075

Wallace Avenue, Bronx, New York,  and 1642 58th Street, Brooklyn, New York.

42.     The aforesaid properties are referred to hereafter as the "**SCHEME 2 PROPERTIES**".

43.     In some instances, Mr. Strulovitch used Plaintiff Investment Funds to **purchase** SCHEME 2 PROPERTIES, and in some cases, Mr. Strulovitch used Plaintiff Investment Funds to **develop/build/rehabilitate** the SCHEME 2 PROPERTIES or to **pay the mortgage payments** on those properties.

44.     Mr. Strulovitch formed the following Holding LLCs to take legal ownership of the SCHEME 2 PROPERTIES: PENN CONDOMINIUM LLC, THROOP HOME, LLC, EIGHTEEN PROPERTIES LLC, THE BUSHWICK PARTNERS LLC, BROOKLYN VENTURES LLC, THE HOWARD DAY HOUSE LLC, 196 ALBANY HOLDINGS L.P., CSN PARTNERS LP, KNICKERBOCKER LOFTS LLC, 741 LEXINGTON LLC, 296 COOPER LLC, WILLTROUT REALTY LLC, STAGG STUDIOS LLC, FIRST AVENUE REALTY HOLDINGS L.P.,  CAS MANAGEMENT COMPANY BAYSHORE, INC., 31 BROOKLYN LLC, 1035 FLUSHING AVE LLC, VICTORY BLVD ASSOCIATE LLC, SOI GROUP LLC, 945 WILLOUGHBY HOLDINGS LLC, 119 HOLDINGS LLC, WALLACE HOLDINGS LLC,  and 1642 EQUITIES LLC.

45.     The Holding LLCs that own the SCHEME 2 PROPERTIES are referred to hereafter as the "**SCHEME 2 COMPANIES**".

46.     Upon information and belief, Mr. Strulovitch controls the SCHEME 2 COMPANIES, and upon information and belief he exercises control over the SCHEME 2 PROPERTIES.

47.     In addition, Mr. Strulovitch fraudulently used Plaintiff Investment Funds to purchase a medical facility located at 8 Maple Avenue, Bay Shore, New York, and a retail

establishment located at 2212 Victory Boulevard, Staten Island, New York.

48.     These two businesses are referred to hereafter as the "**SCHEME 2 BUSINESSES**".

49.     The legal ownership of the medical and retail facilities is registered to CAS MANAGEMENT COMPANY BAYSHORE, INC. ("CAS") and SOI GROUP LLC ("SOI") respectively.

50.     Upon information and belief, Mr. Strulovitch exercises control over CAS and SOI.

51.     The claims against Mr. Strulovitch individually are proper because he was not acting within the scope of his role as Managing Member of the Scheme 2 Companies when he improperly intermingled Plaintiff Investment Funds as part of a fraudulent scheme to purchase Scheme 2 Properties for his personal property portfolio.

52.     The claims against Mr. Strulovitch individually are proper because he was not acting within the scope of his role as Managing Member of the Scheme 2 Companies when he defrauded Plaintiffs by  using Plaintiff Investment Funds intended for Joint Venture Properties on Scheme 2 Properties he purchased/developed for his personal property portfolio.

FRAUDULENT SCHEME III:     **THE STRULOVITCH DEFENDANTS' SHAM TRANSFERS OF PROPERTIES THEY PURCHASED USING PLAINTIFF INVESTMENT FUNDS**

53.     The Strulovitch Defendants fraudulently purchased/developed/paid the mortgage on, the following properties for Mr. Strulovitch's personal property portfolio,  using Plaintiff Investment Funds: 219-221 Rutledge Street, Brooklyn, New York, 420 Tompkins Avenue, Brooklyn, New York; 599 Willoughby Avenue, Brooklyn, New York; 186 Lenox Road, Brooklyn, New York; 254 Penn Street, Brooklyn, New York, 396 South 2nd Street, Brooklyn, New York, 49 Wyckoff Avenue, Brooklyn, New York, 1426, 1428, and 1432 Fulton Street, Brooklyn, New York.

54.     The Strulovitch Defendants originally registered the ownership of these properties to the following Holding LLCs: PENN & MARCY LLC, 420 TOMPKINS, LLC 599-601

WILLOUGHBY LLC, CS YH CONDOS LLC, LENOX 186 HOLDINGS LLC, LENOX 186 REALTY LLC, 400 SOUTH 2ND STREET HOLDINGS L.P., R.P.S. PROPERTIES LLC, FULTON STREET HOLDNGS LLC.

55.    Solely for the purposes of attempting to obscure their fraud, and in particular, to try and obscure Mr. Strulovitch's ownership of these properties, the Strulovitch Defendants transferred the ownership of these properties  (with the exception of 254 Penn Street) to: BNH PROPERTIES LLC, TOMPKINS 420 REALTY LLC, WILLOUGHBY EQUITIES LLC, 186 LENOX LLC, 400 SOUTH 2ND STREET REALTIES L.P., WYKOFF SP LLC and 1428 FULTON ST LLC.

56.    This third group of properties is referred to hereafter as the "**SCHEME 3 PROPERTIES**".

57.     The Holding LLCs that now own the SCHEME 3 PROPERTIES are referred to hereafter as the "**SCHEME 3 COMPANIES**".

58.    Upon information and belief, Mr. Strulovitch controls the SCHEME 3 COMPANIES.

59.    The legal ownership of 254 Penn Street was transferred to the GIVAS OLIM TRUST.

60.    Upon information and belief, the sole purpose of this transfer was so that the Strulovitch Defendants could try and obscure their fraudulent conduct.

61.    Defendants HERMAN GREENFELD and MENDEL BRACH are trustees of the GIVAS OLIM TRUST.

62.    Upon information and belief, HERMAN GREENFELD and MENDEL BRACH reside in Brooklyn, New York.

63.    Upon information and belief, Mr. Strulovitch controls the GIVAS OLIM TRUST.

64.    The claims against Mr. Strulovitch individually are proper because he was not acting within the scope of his role as Managing Member of the Scheme 3 Companies when he improperly intermingled Plaintiff Investment Funds as part of a fraudulent scheme to purchase and fraudulently transfer Scheme 3 Properties.

65.    The claims against Mr. Strulovitch individually are proper because he was not acting within the scope of his role as Managing Member of the Scheme 3 Companies when he defrauded Plaintiffs by arranging the sham transfers of the Scheme 3 Properties.

**FRAUDULENT SCHEME IV**:    **MR. STRULOVITCH'S FRAUDULENT SALE OF JOINT VENTURE PROPERTIES**

66.    In some instances, Mr. Strulovitch sold Joint Venture Properties without returning Plaintiffs' equity and without sharing the profits with Plaintiffs.

67.    Such properties include 908 Bergen Avenue, Brooklyn, 901 Bushwick Avenue, Brooklyn, 1285 Bushwick Avenue, Brooklyn, 369 Gates Avenue, Brooklyn, 853 Lexington Avenue, Brooklyn,   348 St. Nicholas Avenue, Manhattan, New York, 762 Willoughby Ave, Brooklyn, and 1301 Putnam Ave, Brooklyn.

68.    The aforesaid properties are referred to hereafter as "**SCHEME 4 PROPERTIES**".

69.    Prior to selling these properties, the properties had been owned by: 908 BERGEN STREET LLC, 901 BUSHWICK AVENUE LLC, GATES EQUITY HOLDINGS LLC, 853 LEXINGTON LLC, 348 ST. NICHOLAS LLC, 762 WILLOUGHBY LLC, 1301 PUTNAM, LLC, and 855 DEKALB AVENUE LLC.

70.    The aforesaid Holding LLCs are referred to hereafter as the "**SCHEME 4 COMPANIES**".

71.    Upon information and belief, Mr. Strulovitch controls the SCHEME 4 COMPANIES.

72.     Upon information and belief, the Strulovitch Defendants, and/or the SCHEME 4 COMPANIES still possess the monies that were obtained from the sale of the SCHEME 4 PROPERTIES.

73.     The claims against Mr. Strulovitch individually are proper because he was not acting within the scope of his role as Managing Member of the Scheme 4 Companies when he improperly intermingled Plaintiff Investment Funds as part of a fraudulent scheme to purchase and fraudulently sell Scheme 4 Properties.

74.     The claims against Mr. Strulovitch individually are proper because he was not acting within the scope of his role as Managing Member of the Scheme 4 Companies when he defrauded Plaintiffs by  secretly selling the Scheme 4 Properties and failing to distribute the appropriate percentage of the proceeds to the Plaintiffs.

**FRAUDULENT SCHEME V:   MR. STRULOVITCH SOLD PERSONAL PROPERTY HE HAD PURCHASED USING MISAPPROPRIATED PLAINTIFF INVESTMENT FUNDS**

75.     Mr. Strulovitch sold (personal) property he had purchased with funds he misappropriated from Plaintiff Investment Funds.

76.     Such properties include S72-74 South 4th Street, Brooklyn, New York, 619 Hancock Street, Brooklyn, New York, 130 Grand Street, Brooklyn, New York, 208 West 96th Street, New York, New York, 462 36th Street, Brooklyn, New York, 41-49 Spencer Street, Brooklyn, New York, 482- 484 Seneca Avenue, Queens, New York, 1217 Bedford Avenue, Brooklyn, New York, 1266 Pacific Street, Brooklyn, New York, 1086 Myrtle Avenue, Brooklyn, New York, 259 Berry Street, Brooklyn, New York, and 261 Berry Street, Brooklyn, New York.

77.     The aforesaid properties are referred to hereafter as "**SCHEME 5 PROPERTIES**".

78.     Defendants THE BRIDGE TOWER LLC, 619 HOLDINGS LLC, GRAND SUITES LLC, CATALPA DEVELOPMENT, LLC, SLOPE OFFICES LLC, 41-49 SPENCER

LLC, 482-484 SENECA LLC, 1217 BEDFORD LLC, 1266 PACIFIC LLC, MYRTLINO HOLDINGS, LLC, 259 BERRY LLC, and 261 BERRY LLC had held the legal title to these properties before Mr. Strulovitch sold the properties.

79.     The aforesaid companies are referred to hereafter as the "**SCHEME 5 COMPANIES**".

80.     Upon information and belief, Mr. Strulovitch is the beneficial/legal owner of the SCHEME 5 COMPANIES.

81.     Upon information and belief, the Strulovitch Defendants, and/or the SCHEME 5 COMPANIES still possess the monies that were obtained from the sale of the SCHEME 5 PROPERTIES.

82.     The claims against Mr. Strulovitch individually are proper because he was not acting within the scope of his role as Managing Member of the Scheme 5 Companies when he improperly intermingled Plaintiff Investment Funds as part of a fraudulent scheme to purchase and fraudulently sell Scheme 5 Properties.

83.     The claims against Mr. Strulovitch individually are proper because he was not acting within the scope of his role as Managing Member of the Scheme 5 Companies when he defrauded Plaintiffs by  secretly selling the Scheme 5 Properties and failing to distribute the appropriate percentage of the proceeds to the Plaintiffs.

**FRAUDULENT SCHEME VI:     SELF-DEALING COUPLED WITH FRAUD**

84.     At various points during 2014, Mr. Strulovitch and Mr. Oberlander sent many of the Plaintiffs a written prospectus, via e-mail, mail and fax to, pertaining to a Joint Venture Property located at 1173 Bergen Street.

85.     The prospectus represented that the purchase price for 1173 Bergen Street would be 4.7 million dollars.

86.     Based on the representations contained in the prospectus (as well as representations made orally and via e-mail), some of the Plaintiffs wired Plaintiff Investment Funds to accounts owned by Mr. Strulovitch and CS to be used to purchase 1173 Bergen Street.

87.     After Plaintiffs wired the Plaintiff Investment Funds to Mr. Strulovitch and CS, the Strulovitch Defendants notified Plaintiffs that they had been unable to purchase 1173 Bergen Street, because the deal had fallen through.

88.     In fact, as Plaintiffs recently discovered, the Strulovitch Defendants **did** purchase 1173 Bergen Street at that time but kept the property for themselves so they would be able to keep all the profits from the rent/refinancing/sale of the property.

89.     As Plaintiffs also recently discovered, the Strulovitch Defendants purchased the property for $2.5 million and not the $4.7 million they had told Plaintiffs it would cost.

90.     The claims against Mr. Strulovitch individually are proper because he was not acting within the scope of his role as managing member of the Holding LLLCs when he engaged in self-dealing and fraud.

## FIRST CAUSE OF ACTION:   CONSTRUCTIVE TRUST/RESTITUTION

91.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior Paragraphs of this Complaint as if fully set forth herein.

92.     Plaintiffs allege this cause of action as against all Defendants.

93.     This action seeks the imposition of a constructive trust upon the properties identified herein as the SCHEME 1 PROPERTIES, SCHEME 2 PROPERTIES, SCHEME 3 PROPERTIES, and upon the property and assets of the SCHEME 2 BUSINESSES.

94.     As described in detail in the prior paragraphs, the Strulovitch Defendants purchased/built/developed/paid the mortgage on THE SCHEME 1 PROPERTIES, SCHEME 2 PROPERTIES, SCHEME 3 PROPERTIES, and the SCHEME 2 BUSINESSES, using (at least in

part) Plaintiff Investment Funds.

95.    Where a party acquires/develops or pays the mortgage of a property, with the funds

of another, equity will impress a trust upon such property for the benefit of the one whose funds

were used to purchase the property.

96.    The Strulovitch Defendants, have been unjustly enriched through the illicit and

fraudulent use of the Plaintiffs' Investment Funds to acquire/renovate/develop/pay the mortgage

on the SCHEME 1 PROPERTIES, SCHEME 2 PROPERTIES, SCHEME 3 PROPERTIES, and

the SCHEME 2 BUSINESSES.

97.    Equity and good conscience require that the Court impose a constructive trust upon

the SCHEME 1 PROPERTIES, SCHEME 2 PROPERTIES, SCHEME 3 PROPERTIES, and upon

the SCHEME 2 BUSINESSES.

98.     Equity and good conscience require that the Strulovitch Defendants be deemed

involuntary trustees of these properties/assets.

99.    Equity and good conscience require that the Court Order the Strulovitch Defendants

to immediately turn over the SCHEME 1 PROPERTIES, SCHEME 2 PROPERTIES, SCHEME

3 PROPERTIES and SCHEME 2 BUSINESSES, together with all profits derived therefrom.

100.    The Strulovitch Defendants purchased many of the SCHEME 1 PROPERTIES,

SCHEME 2 PROPERTIES, and SCHEME 3 PROPERTIES, subsequent to March 20, 2014[1], and

so fall within the six-year statute of limitations period for constructive trust/restitution/fraud.

101.    In addition, the, SCHEME 2 PROPERTIES, and SCHEME 3 PROPERTIES which

the Strulovitch Defendants purchased prior to March 20, 2014, are also within the six-year statute

of limitations because the Strulovitch Defendants fraudulently used Plaintiffs' funds for several

---

[1] This date includes a statute of limitations toll from March 20, 2020 through September 4, 2020, as per Governor
Cuomo's Executive Order 202.55.

years after the purchase date, to build/develop/improve and pay the mortgage on, these properties.

102.    Plaintiffs also seek the imposition of a constructive trust upon the assets of the SCHEME 4 COMPANIES and SCHEME 5 COMPANIES.

103.    As described in detail in the prior paragraphs, the Strulovitch Defendants purchased/built/developed/paid the mortgage on the Properties acquired by, and subsequently sold by, the SCHEME 4 COMPANIES and the SCHEME 5 COMPANIES, using (at least in part) Plaintiff Investment Funds.

104.    Where a party acquires/develops or pays the mortgage of a property, with the funds of another, equity will impress a trust upon such property for the benefit of the one whose funds were used to purchase the property.

105.    Thus, initially, a constructive trust formed upon the SCHEME 4 PROPERTIES and the SCHEME 5 PROPERTIES.

106.    When the Strulovitch Defendants sold the SCHEME 4 PROPERTIES and the SCHEME 5 PROPERTIES, the constructive trust transferred to the sale proceeds of said properties, and upon any assets purchased with such sale proceeds.

107.    Upon information and belief, the SCHEME 4 COMPANIES and the SCHEME 5 COMPANIES still possess the sales proceeds, and/or other assets purchased with such sale proceeds.

108.    As such, a constructive trust in favor of Plaintiffs is currently impressed upon the SCHEME 4 COMPANIES and the SCHEME 5 COMPANIES and upon any of their assets.

109.    The Strulovitch Defendants have been unjustly enriched through the illicit and fraudulent use of the Plaintiffs' Investment Funds to acquire/renovate/develop/pay the mortgage on the SCHEME 4 PROPERTIES and the SCHEME 5 PROPERTIES.

110.    Equity and good conscience require that the Court impose a constructive trust upon

the sale proceeds of said properties, and upon any assets purchased with such sale proceeds.

111.    Equity and good conscience require that the Strulovitch Defendants be deemed involuntary trustees of these proceeds/assets.

112.    Equity and good conscience require that the Court Order the Strulovitch Defendants to immediately turn over such proceeds/assets.

113.    The Strulovitch Defendants purchased many of the SCHEME 4 PROPERTIES and the SCHEME 5 PROPERTIES subsequent to March 20, 2014[2], and so fall within the six-year statute of limitations period for constructive trust/restitution/fraud.

114.    In addition, the SCHEME 4 PROPERTIES and the SCHEME 5 PROPERTIES which the Strulovitch Defendants purchased prior to March 20, 2014, are also within the six-year statute of limitations because the Strulovitch Defendants fraudulently used Plaintiffs' funds for several years after the purchase date, to build/develop/improve and pay the mortgage on, these properties.

## SECOND CAUSE OF ACTION: EQUITABLE LIEN/RESTITUTION

115.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior Paragraphs of this Complaint as if fully set forth herein.

116.    Plaintiffs allege this cause of action as against all Defendants.

117.    To the extent that the Court declines to find a constructive trust with respect to any of the aforementioned properties or assets, Plaintiffs plead in the alternative, that the Court should impose an equitable lien upon them.

118.    As described in detail in the prior paragraphs, the Strulovitch Defendants purchased/built/developed/paid the mortgage on the aforementioned properties, using (at least in

---

[2] This date includes a statute of limitations toll from March 20, 2020 through September 4, 2020, as per Governor Cuomo's Executive Order 202.55.

part) Plaintiff Investment Funds.

119.     Where a party acquires/develops or pays the mortgage of a property, with the funds of another, equity will impress an equitable lien upon such property in favor of the one whose funds were used to purchase the property.

120.     The Strulovitch Defendants have been unjustly enriched through the illicit and fraudulent use of the Plaintiffs' Investment Funds to acquire/renovate/develop/pay the aforementioned properties.

121.     Equity and good conscience require that the Court impose an equitable lien upon the aforementioned properties, in an amount that is at least equivalent to the amount of Plaintiff Investment Funds the Strulovitch Defendants fraudulently spent on these properties/assets

122.      The Strulovitch Defendants purchased many of the aforementioned properties subsequent to March 20, 2014, and so fall within the six-year statute of limitations period for equitable lien/fraud.

123.     In addition, the aforementioned properties which the Strulovitch Defendants purchased prior to March 20, 2014, are also still within the six-year statute of limitations because the Strulovitch Defendants fraudulently used Plaintiffs' funds for several years thereafter to build/develop/improve and pay the mortgage on these properties.

## THIRD CAUSE OF ACTION**: FRAUD**

124.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior Paragraphs of this Complaint as if fully set forth herein.

125.     Plaintiffs allege this cause of action as against the Strulovitch Defendants.

126.     The Strulovitch Defendants set out to fund their personal property portfolio by stealing as much money as they could from plaintiffs.

127.     The Strulovitch Defendants used the various different property scams described

above as their method of stealing Plaintiffs' money.

128.    The Strulovitch Defendants fraudulently purchased/built/developed/paid the mortgage on the properties listed in this action, using (at least in part) Plaintiff Investment Funds.

129.    As described in detail in the prior paragraphs, the Strulovitch Defendants made numerous oral and written fraudulent statements to Plaintiffs with the express intent of inducing to Plaintiffs to wire them as much money as possible.

130.    Examples of the such fraudulent statements, include but not limited to the following:

i.      Massively and deliberately inflating the purchase price costs of Joint Venture Properties.
ii.     Massively and deliberately under-stating the reasonable development costs of Joint Venture Properties.
iii.    Fraudulently claiming that funds would be used for Joint Venture Property X while knowing that they would use the funds for Joint Venture Property Y.
iv.     Fraudulently claiming that a proposed Joint Venture Property purchase fell through so that they could purchase the property for their personal property portfolio.
v.      Fraudulently representing that they were still developing a Joint Venture Property, when they had already sold the property.
vi.     Fraudulently representing they would keep 55% of any Joint Venture Property profits, but keeping a far higher percentage of the profits.
vii.    Providing deliberately fraudulent updates as to the development status of a Joint Venture Property.
viii.   Fraudulently misrepresenting the nature of a property, such as misstating the number of apartments it contained.
ix.     Fraudulently omitting their intention to fund significant portions of a Joint Venture Property, with a mortgage.
x.      Fraudulently inflating the actual and/or expected rental income of Joint Venture Properties.
xi.     Fraudulently claiming they would own a 100% interest in a Joint Venture Property, despite knowing they had sold a 5% interest to an investor.
xii.    Fraudulently soliciting funds for the purchase of a property they had already purchased.
xiii.   Fraudulently misrepresenting the nature and status of a medical office business.
xiv.    Fraudulently under-stating the amount of funds they were soliciting for investment in a given Joint Venture Property.

131.    The Strulovitch Defendants made at least one of these fraudulent statements to at least one of the Plaintiffs with respect to each and every one of the properties listed herein.

132.    The Strulovitch Defendants made these fraudulent statements on an ongoing, frequent, and periodic basis, both orally and in writing, beginning in or around 2012, and continuing at least through the end of 2018.

133.    Plaintiffs reasonably and materially relied on the Strulovitch Defendants' fraudulent statements in deciding to send them Plaintiff Investment Funds.

134.    Plaintiffs would not have wired the Strulovitch Defendants the money they did had the Strulovitch Defendants not made the aforesaid fraudulent statement.

135.    In addition, Mr. Strulovitch made numerous fraudulent oral and written statements to various banks and lenders so as to obtain millions of dollars in mortgages/refinancing for the Joint Venture Properties.

136.    Examples of such fraudulent oral and written statements include fraudulently representing to said banks/lenders that he was the sole member of the Holding LLC.

137.    Mr. Strulovitch also inflated projected construction costs when applying for such loans so as to increase the amount the banks would lend him against the property.

138.    These fraudulent statements to lenders also directly harmed Plaintiffs because they saddled the Joint Venture Properties with unreasonable amounts of debt.

139.    The Strulovitch Defendants also secretly sold several of the Joint Venture Properties without Plaintiffs consent or knowledge by fraudulently representing to the buyer that he had the sole authority to authorize such sales.

140.    Mr. Strulovitch made these fraudulent representations to the banks/lenders so as to be able to secretly monetize for himself the Joint Venture Properties, by obtaining loans secured against the Joint Venture Properties, which monies he used for his own personal benefit to the detriment of Plaintiffs.

141.    When Plaintiffs recently found out about an attempt by Mr. Strulovitch to sell a

Joint Venture Property, Mr. Strulovitch lied to Plaintiffs and stated he had ceased efforts to sell the property.

142.     Plaintiffs would have ceased investing any additional monies with the Strulovitch Defendants had they known about Strulovitch Defendants' fraudulent acts and statements to the banks.

143.     As a result of the Strulovitch Defendants' fraudulent borrowing against the Joint Venture Properties, many of the properties have been saddled with massive amounts of debt and/or are in foreclosure.

**EXAMPLES OF DEFENDANTS' FRAUD WITH RESPECT TO SPECIFIC PROPERTIES**

**908 Bergen Street**

144.     In or about February 2012,  Strulovitch and Oberlander sent one or more of the Plaintiffs, a prospectus describing a potential Joint Venture Property located at 908 Bergen Street, Brooklyn, NY.

145.     The prospectus sought Plaintiff Investment Funds totaling $250,000 to purchase this Joint Venture Property.

146.     The prospectus misrepresented, inter alia, that the purchase price of this Joint Venture Property, including closing costs, was going to be $425,000.

147.     Contrary to this misrepresentation, Strulovitch and Oberlander knew that the actual price that they would pay for this Joint Venture Property was only $200,000.

148.     The prospectus also misrepresented that the Joint Venture Property contained three apartments.

149.     Contrary to this misrepresentation, Strulovitch and Oberlander knew that the Joint Venture Property only contained two apartments.

150.     The prospectus also misrepresented that the renovations to the Joint Venture Property would cost $650,000.

151.     Contrary to this misrepresentation, Strulovitch and Oberlander knew that the renovation costs would total approximately $1 million.

152.     Among the numerous representations made to the Plaintiffs in order to induce them to wire Plaintiff Investment Funds to Strulovitch and Oberlander for this Joint Venture Property were the following:

- Within 6 months, Strulovitch and Oberlander would complete all renovations necessary to refinance the acquisition and construction loans and repay all of the capital supplied by Plaintiffs;
- Strulovitch and Oberlander would renovate the Joint Venture Property into a three- family residential building containing two three-bedroom apartments and one six- bedroom apartment, all of which would yield distributions to Plaintiffs equal to 45% of the $70,200 in net annual rental profits that the three apartments would generate and 45% of all other profits realized from these Joint Venture Properties;
- It would be Strulovitch and Oberlander' sole responsibility to raise any additional capital for the project in the event that more than $250,000 was needed;
- Strulovitch and Oberlander would arrange all tax reporting needed for the project and would handle compliance with all of the state and local regulations, (including permits and local building department regulations); and
- Strulovitch and Oberlander would "tend to, manage, and worry for" the project by doing all that is required for the success of the business venture in its initiation and continuation, and for the rental and any sale.

153.     Between February and April 2012 (this is an approximate date-range), prior to the acquisition of this Joint Venture Property, at least one of the Plaintiffs, wired Plaintiff Investment Funds to Strulovitch and Oberlander, to be used for the purchase and development of this Joint Venture Property in accordance with the terms and conditions set forth in the prospectus for this Joint Venture Property, in consideration for the promised share of profits.

154.     But for the fraudulent representations and omissions in the prospectus, Plaintiffs would not have wired Plaintiff Investment Funds to Strulovitch and Oberlander.

155.     Because of Defendants' ongoing fraudulent misrepresentation with respect to this Joint Venture Property, Plaintiffs only learned of Strulovitch and Oberlander's fraudulent activity

pertaining to this Joint Venture Property, within the last two years.

**760-762 Willoughby Avenue**

156.     In or about October 2012,  Strulovitch and Oberlander sent Plaintiffs a prospectus to induce them to invest $600,000 for the purchase and development of 578 Union Street.

157.     In or about October 2012, one or more of the Plaintiffs wired funds to Strulovitch and Oberlander to be used for the purchase and development of this Joint Venture Property in accordance with the terms and conditions set forth in the prospectus.

158.     In or about December 2012, Strulovitch and Oberlander purported to cancel the purchase of this Property stating that the buyer backed out on the deal.

159.     However, this was a lie, as Strulovitch and Oberlander purchased this property on December 28, 2012 in the name of a nominee and proceeded to develop it without delay to the exclusion of the Plaintiffs.

160.     Rather than return the Plaintiffs' capital, which Strulovitch and Oberlander had already diverted for their own benefit without disclosing any of the foregoing facts to the Plaintiffs, in December 2012, Strulovitch and Oberlander sent Plaintiffs a prospectus to induce them to reinvest some of the $520,000 of the $600,000 already transferred for the purchase and development of 760-762 Willoughby Avenue and to solicit other Plaintiffs to transfer additional funds above and beyond this $520,000 for the Joint Venture Property at 760-762 Willoughby Avenue.

161.     The prospectus for 760 Willoughby misrepresented, inter alia, that the purchase price of this property, including closing costs, was going to be $1,295,000.

162.     Contrary to this representation, Strulovitch and Oberlander knew that the actual price they would pay in total for the property was only $995,000, not $1,295,000, including closing costs, for which Strulovitch and Oberlander had already secured financing of $1.1 million.

163.     The prospectus also misrepresented that the renovation of the property would cost $325,000.

164.     Contrary to this representation, Strulovitch and Oberlander knew that the renovations would cost  approximately $1.5 million.

165.     Among the numerous representations made to the Plaintiffs in order to induce them to invest in this Joint Venture Property, through an LLC Plaintiff, were the following:

   •     Within seven months of the closing on the Property, Defendants would complete all renovations necessary to refinance the acquisition and construction loan and repay all of the capital supplied by Plaintiffs;
   •     Defendants would renovate the Properties into one two-bedroom and seven four-bedroom residential apartments (with the possibility of an extra four-bedroom apartment), all of which would yield distributions to Plaintiffs equal to 45% of the $175,800 in net annual rental profits and 45% of all other profits realized from these Joint Venture Properties;
   •     It would be Defendants' sole responsibility to raise any additional capital for the project in the event that more than $520,000 was needed;
   •     Defendants would arrange all tax reporting needed for the project and would handle compliance with all of the state and local regulations, (including permits and local building department regulations); and
   •     Defendants would ensure that the Joint Venture Property was properly developed, rented and/or sold.

166.     In or about December, 2012, prior to the acquisition of this Joint Venture Property, one or more of the Plaintiffs wired funds to Strulovitch and Oberlander to be used for the purchase and development of this Joint Venture Property in accordance with the terms and conditions set forth in the prospectus.

167.     But for the fraudulent representations and omissions in the prospectus, Plaintiffs would not have wired Plaintiff Investment Funds to Strulovitch and Oberlander.

168.     Because of Defendants' ongoing fraudulent misrepresentation with respect to this Joint Venture Property, Plaintiffs only learned of Strulovitch and Oberlander's fraudulent activity pertaining to this Joint Venture Property, within the last two years.

**855 Dekalb Avenue and 454 Central Avenue**

169.     In or about May,  2013, Strulovitch and Oberlander sent Plaintiffs a prospectus to induce them to invest $1,290,000 for the purchase and development of the Joint Venture Properties located at 855 Dekalb Avenue and 454 Central Avenue.

170.     The prospectuses misrepresented, inter alia, that the purchase price of 855 Dekalb Avenue was going to be $1,800,000 and the purchase price of the 454 Central Avenue, including closing costs, was going to be $550,000.

171.     But contrary to this misrepresentation, Strulovitch and Oberlander knew that the actual price they would pay for 454 Central Avenue was only $420,000.

172.     Strulovitch and Oberlander also failed to disclose that they had already purchased 855 Dekalb Avenue one year prior for $825,000.

173.     The prospectus also misrepresented that renovations for the Dekalb Avenue property would cost $2.7 million.

174.     Contrary to this misrepresentation, Strulovitch and Oberlander knew that the renovations would cost approximately $3.8 million.

175.     The prospectus also misrepresented that renovations for the Central Avenue property would cost $280,000.

176.     Contrary to this misrepresentation, Strulovitch and Oberlander knew that the renovations would cost approximately $500,000.

177.     Among the numerous representations made to the Plaintiffs in order to induce them to invest in this Property, through an LLC Plaintiff, were the following:

- On 855 Dekalb Avenue, renovation of 10 three-bedroom and 10 two-bedroom units and on 454 Central Avenue renovation of 3 three-bedroom units all with a full repayment of Plaintiffs' capital within 8 months of the closing on these Joint Venture Properties;
- Payment by Strulovitch and Oberlander of 45% of the $445,500 in rental profits that the 23 units would yield and 45% of all other profits realized from this Building;
- It would be Defendants' sole responsibility to obtain a loan for the project in the event that more than $1,290,000 was needed;
- Defendants would arrange all tax reporting needed for the project and would handle

compliance with all of the state and local regulations, (including permits and local building department regulations); and

• Defendants would ensure that the Joint Venture Property was properly developed, rented and/or sold.

178. In or about May 2013, prior to the acquisition of 454 Central Avenue, and prior to the time when the Plaintiffs in this Joint Venture Property believed that Strulovitch and Oberlander were going to close on the acquisition of 855 Dekalb Avenue, one or more of the Plaintiffs wired funds to Strulovitch and Oberlander to be used for the purchase and development of this Joint Venture Property in accordance with the terms and conditions set forth in the prospectus.

179. But for the fraudulent representations and omissions in the prospectus, Plaintiffs would not have wired Plaintiff Investment Funds to Strulovitch and Oberlander.

180. Because of Defendants' ongoing fraudulent misrepresentation with respect to this Joint Venture Property, Plaintiffs only learned of Strulovitch and Oberlander's fraudulent activity pertaining to this Joint Venture Property, within the last two years.

**8 Maple Avenue**

181. In or about March, 2014, Strulovitch and Oberlander sent one or more plaintiffs a prospectus for the purchase of a fully renovated and operational medical office at 8 Maple Avenue, in Bay Shore New York.

182. The prospectus for this property stated that it was a 1) fully functioning medical office, 2) had a monthly rent roll of $30,000, and 3) that Strulovitch and Oberlander had hired accountants to review the books and records provided by the sellers in order to confirm the viability of the project.

183. However, contrary to the representations in the prospectus, Strulovitch and Oberlander concealed, that (i) there were no permits in place to operate the project in accordance with the prospectus; (ii) the medical business that was represented to be a tenant had already gone

out of business; and (iii) Strulovitch and Oberlander had not, in fact, hired any accountants to review the books and records at all.

184.    Further still, Strulovitch and Oberlander failed to disclose that, as a result of the shortfall created by the failed medical business at 8 Maple, they were already soliciting additional investors for the project and would use the funds from these other investors to cover the shortfall and, as a result, would dilute the holdings of the Plaintiffs who had already invested in this project.

185.    Prior to the acquisition of this Joint Venture Property one or more of the Plaintiffs wired funds to Strulovitch and Oberlander to be used for the purchase and development of this medical office in accordance with the terms and conditions set forth in the prospectus.

186.    Contrary to their representations, Strulovitch and Oberlander concealed that (i) there were no permits in place to operate the project in accordance with the prospectus; (ii) the medical business that was represented to be a tenant had already gone out of business; and (iii) Strulovitch and Oberlander had not, in fact, hired any accountants to review the books and records at all.

187.    They further fraudulently concealed that, as a result of the shortfall created by the failed medical business at 8 Maple, they were already soliciting additional investors for the project and would use the $600,000 received from these other investors to cover the shortfall and, as a result, dilute the holdings of Plaintiffs who had already invested in this project.

188.    But for the fraudulent representations and omissions in the prospectus, Plaintiffs would not have wired Plaintiff Investment Funds to Strulovitch and Oberlander.

189.    Because of Defendants' ongoing fraudulent misrepresentation with respect to this joint venture, Plaintiffs only learned of Strulovitch and Oberlander's fraudulent activity within the last two years.

**73 Empire Boulevard and 980 Atlantic Avenue**

190.     In January and May of 2014,  Strulovitch and Oberlander sent prospectuses for the purchase of ground leases and the development of buildings located on 73 Empire Boulevard and 980 Atlantic Avenue.

191.     These prospectuses sought to induce the Plaintiffs to invest in $1,800,000 in a ground lease for 73 Empire Boulevard and $2,700,000 in a ground lease for 980 Atlantic Avenue.

192.     The prospectuses for these projects misrepresented, inter alia, that the purchase prices of these ground leases, including closing costs, were going to be $1,000,000 and $1,250,000 respectively.

193.     But contrary to these misrepresentations, and without disclosing any additional facts to the Plaintiffs, Strulovitch and Oberlander acquired these ground leases on 73 Empire Boulevard and 980 Atlantic Avenue for either no upfront fees whatsoever or nominal fees.

194.     Among the numerous representations made to the Plaintiffs in order to induce them to invest in this Property at 73 Empire Boulevard, through an LLC Plaintiff, were the following:

•       Within approximately 15 months of the closing on the Property, Defendants would complete all renovations of the first floor necessary to lease out the entire 30,000 square foot building such that rent from the lease would generate $752,000 in profits and repay all of the capital supplied by the Plaintiffs
•       Thereafter there was to be a second phase involving the construction of a 40 unit apartment building to be financed solely by a $6,000,000 loan from a bank, which after completion would yield an additional $687,000 profit;
•       45% of all profits, including the profits from rents that were realized from this ground lease would be paid to the Plaintiffs; and
•       Defendants would ensure that the Joint Venture Property was properly developed, rented and/or sold.

195.     Among the numerous representations made to the Plaintiffs in order to induce them to invest in this property, were the following:

•       Within 18 months of the closing on the Property, Defendants would complete all renovations necessary to complete a refinancing of the original bank loan that would repay all of the capital supplied by the Plaintiffs;
•       45% of all profits realized from this lease would be paid to Plaintiffs; and
•       Defendants would ensure that the Joint Venture Property was properly developed,

rented and/or sold.

196.    Prior to the acquisition of these ground leases, one or more of the Plaintiffs wired funds to Strulovitch and Oberlander to be used in accordance with the terms and conditions set forth in the prospectus.

197.    But for the fraudulent representations and omissions in the prospectus, Plaintiffs would not have wired Plaintiff Investment Funds to Strulovitch and Oberlander.

198.    Because of Defendants' ongoing fraudulent misrepresentation with respect to this Joint Venture Property, Plaintiffs only learned of Strulovitch and Oberlander's fraudulent activity pertaining to this Joint Venture Property, within the last two years.

**720 Livonia Avenue**

199.    In August 2014, Strulovitch and Oberlander offered Plaintiffs the opportunity to invest in a project at 1173 Bergen Street.

200.    Strulovitch and Oberlander solicited and obtained a total of $2,500,000 in Plaintiff Investment Funds.

201.    In or about October 2014, Strulovitch and Oberlander misrepresented to the Plaintiffs that: (i) the opportunity to purchase 1173 Bergen Street had fallen through and (ii) instead of refunding the $2.5 million, Strulovitch and Oberlander induced the Plaintiffs who had earmarked funds for the project at 1173 Bergen Street to contribute an additional $900,000, for a total investment of $3.4 million, so Strulovitch and Oberlander could purchase and renovate for the Plaintiffs the Joint Venture Property located at 720 Livonia Avenue, for which Strulovitch and Oberlander had sent a prospectus.

202.    Strulovitch and Oberlander then further misrepresented at that time that this would be a lucrative investment as Strulovitch had an agreement with New York City to execute a 15-year lease once he had closed on this property.

203.     But this was all a lie, as the deal to purchase 1173 Bergen Street had not fallen through.  In fact, Strulovitch and Oberlander had actually assembled a three-building package from the same sellers to purchase the Secret Property located at 1173 Bergen Street, 196 Albany Avenue and the Joint Venture Property located on 720 Livonia Avenue.

204.     Further to inducing the Plaintiffs to invest in 720 Livonia Avenue, in September 2014, Strulovitch and Oberlander had sent a prospectus to the Plaintiffs in September, 2014 to induce them to invest $3,300,000 in order to purchase the Joint Venture Property located at 720 Livonia Avenue.

205.     The prospectuses for this project misrepresented, inter alia, that the purchase price of this Joint Venture Property, including closing costs, were going to be $5,000,000.  Contrary to this representation, Strulovitch and Oberlander knew that the sale contract's price for the Joint Venture Property was only $4,500,000.

206.     Strulovitch and Oberlander also misrepresented that the Joint Venture Property's rent roll would be $1,176,000, when they knew it would be significantly less.  They had in had a market-rate rent offer of approximately $730,000.

207.     Among the numerous representations made to the Plaintiffs in order to induce them to invest in this Property at 720 Livonia Avenue, through an LLC Plaintiff, were the following:

- Within one year of the closing, Defendants would complete all renovations of the property necessary to refinance the acquisition and construction loan and repay all of the capital supplied by Plaintiffs with these loan proceeds;
- Defendants would rent out the property either as an old age home or a school;
- 45% of such profits and all other proceeds realized from this lease would be paid to Plaintiffs;
- Defendants would ensure that the Joint Venture Property was properly developed, rented and/or sold.

208.     Strulovitch and Oberlander intentionally omitted from the prospectus for this Joint Venture Property the fact that they had already sold to an individual named Chaim Landau the right to own a direct ownership interest in this Joint Venture Property once Strulovitch and

Oberlander purchased it.

209.     Strulovitch and Oberlander intentionally omitted from the prospectus for this Joint Venture Property the fact that they had already sold to another investor a direct 5% interest in the ownership of this Joint Venture Property even though the Plaintiffs were misled into believing that together with Strulovitch, they would own 100% of the Joint Venture Property.

210.     Prior to December, 2014, one or more of the Plaintiffs wired funds to Strulovitch and Oberlander to be used for the purchase and development of this Joint Venture Property in accordance with the terms and conditions set forth in the prospectus.

211.     Further, despite Strulovitch and Oberlander misrepresentation that they had repurposed Plaintiffs' money earmarked for 1173 Bergen Street for the purpose of acquiring and developing 720 Livonia Avenue, Strulovitch and Oberlander instead actually used the Plaintiffs' funds, to cover a cash shortfall which was necessary for Strulovitch and Oberlander to close on 196 Albany Avenue on November 25, 2014.

212.     196 Albany Avenue is now a $10,000,000 renovated building with an already existing rent roll, which Strulovitch and Oberlander kept for themselves to the exclusion of the Plaintiffs' whose money they used to acquire it.

213.     Similarly, 1173 Bergen Street is a lucrative property Strulovitch and Oberlander are actively developing—to the exclusion of Plaintiffs.

214.     Because they had used Plaintiffs' money to purchase those two Secret Properties, Strulovitch and Oberlander further misrepresented by email that they had closed on 720 Livonia Avenue in January 2015.

215.     This too was a lie, as Strulovitch and Oberlander did not close on 720 Livonia Avenue until six months later because they had used the funds supplied by Plaintiffs to acquire 720 Livonia Avenue for other purposes detailed above.

216.    720 Livonia Avenue is one of many Joint Venture Properties that Defendants have allowed to languish, unoccupied and unrenovated, and to fall in to foreclosure.

217.    But for the fraudulent representations and omissions in the prospectus, Plaintiffs would not have wired Plaintiff Investment Funds to Strulovitch and Oberlander.

218.    Because of Defendants' ongoing fraudulent misrepresentation with respect to this Joint Venture Property, Plaintiffs only learned of Strulovitch and Oberlander's fraudulent activity pertaining to this Joint Venture Property, within the last two years.

219.    None of the Plaintiffs in this action signed any written agreements with Defendants and in particular, none of the Plaintiffs signed any agreements containing an arbitration clause.

220.    All of the Plaintiffs in this action learned of the fraud specified in this action within the last two years.

221.    None of the Plaintiffs in this action have previously signed any documents authorizing litigation against Defendants or pertaining to the subject-matter of this lawsuit.

## FOURTH CAUSE OF ACTION: **Racketeering – 18 U.S.C. § 1962(c)**

222.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the prior paragraphs as if fully set forth herein.

**A.    THE ENTERPRISE**

223.    The members of the Strulovitch-Oberlander Enterprise (hereinafter the "Enterprise"), consisted of Mr. Strulovitch and Mr. Oberlander, working in conjunction with CS, and many of the other defendant companies owned by Mr. Strulovitch.

224.    The Enterprise operated in Brooklyn and Manhattan, as well as in other states within the United States, as well as within other countries, such as Israel, Switzerland and Canada.

225.     The Enterprise engaged in bank fraud, wire fraud, violations of the National Stolen Property Act, larceny and other known and unknown criminal acts in order to finance and enrich

the Enterprise and its members.

226.     The Enterprise, meets the legal definition of an "enterprise", as defined by Title 18, United States Code, Section 1961(4), in that it is a group of individuals and companies, associated in fact.

227.     The Enterprise constitutes an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

228.     The Enterprise was engaged in, and its activities affected interstate and foreign commerce.

**B.     PURPOSES OF THE ENTERPRISE**

229.     The purposes of the Enterprise, included the following:

a.  Promoting and enhancing the prestige, reputation and position of the Enterprise and its members with respect to legitimate banks, lenders, investors and potential investors in order to maintain a steady flow of income for the Enterprise and its members over a 6 year period;

b.  Preserving and protecting the criminal ventures of the enterprise through the use of, *inter alia*, wire fraud, bank fraud, violations of the National Stolen Property Act and larceny and;

c.  Enriching the members and associates of the Enterprise through criminal activity, including fraud, larceny, bank fraud, money laundering and the illegal investment of the proceeds of the Enterprise into another enterprise.

230.     Specifically, the Enterprise was organized through, *inter alia*, a series of legally created entities that were manipulated by Mr. Strulovitch and Mr. Oberlander,  in order to illegally obtain vast sums of money from the Plaintiffs through fraudulent misrepresentations.  Thereafter, the fraudulently obtained money was diverted and deposited into named accounts and entities constituting a part of the Enterprise that were controlled by and for the benefit of the Strulovitch Defendants. Specific dates of wire transfers, names of accounts and entities are listed herein as predicate acts.

231.     Mr. Strulovitch and Mr. Oberlander using CS and the other Strulovitch Defendants,

conducted the affairs of the Enterprise through an extensive and complex pattern of racketeering activities outlined herein, including, but not limited to, 1) numerous instances of fraudulently solicited wire transfers from the Plaintiffs 2) that were transferred to accounts controlled by Mr. Strulovitch and 3) were thereafter secretly and illegally transferred to entities controlled by Mr. Strulovitch.

232.     The monies provided by Plaintiffs, which were intended to be used in the acquisition and operation of specific Joint Venture Properties, were instead, in significant part, siphoned, diverted, misappropriated and used by the Strulovitch Defendants to acquire, invest and maintain properties that were owned and controlled by the Strulovitch Defendants, for the personal enrichment of Mr. Strulovitch and Mr. Oberlander.

233.     Numerous wire transfers from the Plaintiffs, collectively totaling millions of dollars, were fraudulently diverted without their knowledge or consent, to the Strulovitch Defendants.

234.      Individual acts of fraud continued for several years and were all necessary and interconnected to maintain, fund and benefit the Enterprise and its members.

C.     **MEANS AND METHODS OF THE ENTERPRISE**

235.     Among the means and methods by which the Strulovitch Defendants participated in the conduct of the affairs of the Enterprise were the following:

236.     Mr. Strulovitch and other Strulovitch Defendants committed multiple and continuous acts of wire fraud, bank fraud and larceny and other known and unknown criminal acts that were intended and did allow the enterprise to continue by enriching the Enterprise and its members;

237.     Mr. Strulovitch and other Strulovitch Defendants diverted and reinvested the fraudulently obtained proceeds from Plaintiffs into properties maintained and controlled by

Strulovitch and Oberlander to enhance the Enterprise's prestige and to protect, conceal and expand the Enterprise's criminal operations;

238.    Mr. Strulovitch and other Strulovitch Defendants agreed to and did conduct and participate in the affairs of the Enterprise through a pattern of racketeering listed below and for the unlawful purpose of intentionally defrauding Plaintiffs.

239.    From approximately February 2012 and continuing until at least January 2020, the Strulovitch Defendants and Mr. Oberlander formed and knowingly and intentionally took part in an enterprise affecting  interstate and foreign commerce, and engaged in a pattern of racketeering activity, as that term is defined by 18 U.S.C. §§ 1961(1) and 1961(5).

## RACKETEERING PREDICATE ACTS 1-17

### (Wire Fraud)

240.    From 2012, and continuing to present, the Strulovitch Defendants knowingly and intentionally devised a scheme to defraud Plaintiffs, and specifically, to obtain money from them by means of materially false and fraudulent pretenses, representations and promises.

241.    As part of said fraudulent scheme, one or more of the Strulovitch Defendants sent and/or caused to be sent, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, contrary to 18 U.S.C. § 1343.

242.     Each of the representative transfers, listed below, which are a representative sample of many other fraudulent wire transfers,  was directed by one or more of the Strulovitch Defendants to be sent to accounts designated and controlled by one or more of the Strulovitch Defendants and constitutes a separate racketeering act.

| ON OR ABOUT DATE OF TRANSFER | WIRE TRANSFER AMOUNT |
| --- | --- |
| February 24, 2012 | $39,200.00 |
| May 3, 2012 | $100,000.00 |
| October 31, 2012 | $300,000.00 |
| January 25, 2013 | $150,000.00 |

| | |
|---|---|
| May 8, 2013 | $50,000.00 |
| October 28, 2013 | $138,000.00 |
| January 9, 2014 | $220,371.00 |
| April 14, 2014 | $250,000.00 |
| November 5, 2014 | $200,000.00 |
| December 15, 2014 | $523,982.00 |
| March 12, 2015 | $100,000.00 |
| November 2, 2015 | $10,000.00 |
| 12/20/2013 | $250,000.00 |
| 3/27/2014 | $400,000.00 |
| 4/14/2014 | $250,000.00 |
| 6/25/2014 | $1,000,000.00 |
| 2/11/2015 | $500,000.00 |

## RACKETEERING PREDICATE ACT 18

### (Money Laundering Conspiracy)

243. Between (approximately) January, 2012 and continuing to the present, the Strulovitch Defendants, together with others, did knowingly and intentionally conspire to engage in one or more financial transactions, to wit: deposits, withdrawals and transfers of funds and monetary instruments, in and affecting interstate and foreign commerce, by, through and to one or more financial institutions, which transactions in fact involved the proceeds of specified unlawful activity, to wit: wire fraud, in violation of 18 U.S.C. § 1708, knowing that the property involved in the financial transactions was purchased with funds obtained through fraud,  and knowing that the financial transactions were designed in whole or part, to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, contrary to 18 U.S.C. § 1956(a)(1)(B)(i).

244. The  Strulovitch Defendants deposited and transferred millions of dollars of Plaintiffs' money in order to enrich themselves personally, and used such funds to secretly purchase and sell properties so as  to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the wire fraud in violation of 18 U.S.C. § 1956(h).

### RACKETEERING PREDICATE ACTS 19-24

**(Money Laundering, 18 U.S.C. 1956(a)(l)(B)(i), 2)**

245.    Between (approximately) January, 2012 and continuing to the present, the Strulovitch Defendants, together with others, did knowingly and intentionally engage in one or more financial transactions, to wit; deposits, withdrawals and transfers of funds and monetary instruments, in and affecting interstate and foreign commerce, by, through and to one or more financial institutions, which transactions in fact involved the proceeds of specified unlawful activity, to wit: wire fraud, in violation of 18 U.S.C. § 1343, knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity.  A representative but not exclusive list of transfers from accounts controlled by the Strulovitch Defendants that were used to purchase properties and to otherwise provide for their own personal enrichment and to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds obtained from Plaintiffs through wire fraud are listed below as separate racketeering acts.

| ON OR ABOUT DATE OF TRANSFER/DEPOSIT | APPROXIMATE AMOUNT |
| --- | --- |
| 7/9/2012-7/19/2012 | $445,000.00 |
| 12/20/2013 | $250,000.00 |
| 3/27/2014 | $400,000.00 |
| 4/14/2014 | $250,000.00 |
| 6/25/2014 | $1,000,000.00 |
| 2/11/2015 | $500,000.00 |

**RACKETEERING PREDICATE ACTS 25-31**

**(Bank fraud)**

246.    On or about and between the dates listed below, Mr. Strulovitch, together with others,  knowingly executed a scheme or artifice to obtain the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution,

by means of false or fraudulent pretenses, representations, or promises; to wit, false financial

statements pertaining to a mortgage application and other loan documents claiming full and sole

ownership of many of the Holding LLCs listed in this action, even though he knew that he was not

the full and sole owner or member of said Holding LLC in order to secure loans from the defrauded

banks, in violation of 18 U.S.C. § 1344(2).  Each submission of a false statement and submission

of bogus financial and operating documents constitutes a separate racketeering act.

| DATES | BANK VICTIM | FALSE STATEMENT |
|---|---|---|
| 9/27/2013 | Signature Bank | false 255 tax affidavit |
| 12/2/2013 | Signature Bank | false 255 tax affidavit |
| 12/2/2013 | Signature Bank | false 255 tax affidavit |
| 4/7/2014 | Signature Bank, N.A. | mortgage agreement |
| 4/7/2014 | Signature Bank N.A | false affidavit |
| 6/30/2014 | First Niagara Bank N.A | false affidavit |
| 2/4/2015 | Cathay Bank | modified mortgage Agreement |

## RACKETEERING PREDICATE ACTS 32-49

## (National Stolen Property Act, 18 U.S.C. § 2314)

247.     Beginning on or about and between February 2012 and continuing  to the present,

the Strulovitch Defendants did transport, transmit, or transfer in foreign commerce  money, of the

value of $5,000 or more, knowing the same to have been taken by fraud.  Each of the transfers

below, which are only a part of the $11,000,000.00 or more of fraudulently  taken money,

constitutes a separate racketeering act:

| ON OR ABOUT DATE OF TRANSFER | WIRE TRANSFER AMOUNT |
|---|---|
| May 25, 2012 | $110,000 |
| June 8, 2012 | $60,000 |
| June 27, 2012 | $50,000 |
| June 28, 2012 | $100,000 |
| July 11, 2012 | $80,000 |
| July 12, 2012 | $45,000 |
| February 24, 2012 | $39,200.00 |
| May 3, 2012 | $100,000.00 |
| October 31, 2012 | $300,000.00 |

| | |
|---|---|
| January 25, 2013 | $150,000.00 |
| May 8, 2013 | $50,000.00 |
| October 28, 2013 | $138,000.00 |
| January 9, 2014 | $220,371.00 |
| April 14, 2014 | $250,000.00 |
| November 5, 2014 | $200,000.00 |
| December 15, 2014 | $523,982.00 |
| March 12, 2015 | $100,000.00 |
| November 2, 2015 | $10,000.00 |

## FIFTH CAUSE OF ACTION:  RICO INVESTMENT OF INCOME

248.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the prior paragraphs as if fully set forth herein.

249.    Between February 2012 and continuing to the present, the Enterprise through its members, did knowingly and intentionally conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity as set forth in the foregoing paragraphs.

250.    The Enterprise through its members, unlawfully received income derived, directly or indirectly, from a pattern of the above stated racketeering acts which income or the proceeds or part of said income was used or invested, directly or indirectly, in the acquisition of or an interest in, or the establishment or operation of, legal enterprises which are engaged in, or the activities of which affect, interstate or foreign commerce, as consisting of the racketeering acts set forth below.

251.    The Enterprise through its members unlawfully and repeatedly took money invested by Plaintiffs for the purchase and operation of specific Joint Venture Properties and used said funds for the purchase of other properties which they registered to their own private ownership,  to the detriment of Plaintiffs and to the benefit of the Enterprise and its members.

252.    As a direct and proximate result of the aforesaid racketeering activities and violations of 18 U.S.C. § 1962(a) as set forth in the prior paragraphs, Plaintiffs have been injured in their business and property in that, as a result of the diversion and investment of Plaintiffs' funds

into properties controlled by the Enterprise and its members;

⟩ Plaintiffs' investments have been severely injured and compromised by numerous foreclosure actions and other legal proceedings seeking to deprive Plaintiffs' ownership of the Joint Venture Properties;

⟩ There has been a diminution of value, equity, and income from the Joint Venture Properties, to wit; the Holding Companies are charged higher interest rates because of defaults on additional and otherwise unnecessary loans that were directly caused by the re-investment,

⟩ Plaintiffs were deprived of their ownership interest in numerous properties they were led to believe they were investing in

253.    A representative, but not exclusive, list of the Enterprise's illegal use of Plaintiff

Investment Funds is listed below:

**RACKETEERING ACT 1-5**

| DATE THE STRULOVITCH DEFENDANTS USED PLAINTIFF FUNDS FOR FRAUDULENT PURPOSES/ACQUISITIONS |
| --- |
| Approximately April 1, 2014. |
| Approximately April 1, 2014. |
| 3/27/2014 |
| 4/14/2014 |
| 6/25/2014 |
| 2/11/2015 |

## SIXTH CAUSE OF ACTION: **RACKETEERING CONSPIRACY**

254.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the

prior paragraphs as if fully set forth herein.

255.    Between January 2012 and the present, the Enterprise through its members,

engaged in fraudulent interstate and foreign commerce activities  and did knowingly and

intentionally conspire to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity, as that term is defined by 18 U.S.C. §§ 1961(1) and 1961(5).

256.     The Enterprise through its members unlawfully conspired to receive income derived, directly or indirectly, from a pattern of racketeering acts which income or the proceeds or part of said income was used or invested, directly or indirectly, in the acquisition of or an interest in, or the establishment or operation of, legal enterprises which are engaged in, or the activities of which affect, interstate or foreign commerce.

257.     The pattern of racketeering activity through which the Enterprise through its members agreed to conduct the affairs of the Enterprise consisted of the racketeering acts set forth in the prior alleged acts of Racketeering Activity, which are realleged and incorporated as if fully set forth in this paragraph.

258.     The Enterprise and its members knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above.

259.     That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(a) and (c), in violation of 18 U.S.C. § 1962(d).

260.     As direct and proximate result of this conspiracy, the overt acts listed as Racketeering Acts above, among others, that were taken in furtherance of the conspiracy, Plaintiffs were injured  in that (i) they were defrauded of several million dollars, (ii) the Strulovitch Defendants wrongfully acquired, developed and/or otherwise financed and capitalized properties for their private property portfolios, using Plaintiffs' funds, (iii) the value, equity, and structural integrity of the Joint Venture Properties have been diminished; and (iv) some of the Joint Venture Properties are subject to total loss as a result of Defendants' neglect.

## SEVENTH CAUSE OF ACTION:  **CONVERSION**

261.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the prior paragraphs as if fully set forth herein.

262.    As set forth above, Defendants improperly used Plaintiff Investment, and have converted these funds, and the properties they purchased and developed with these funds, for themselves.

263.    This misuse of these funds was not intended to benefit Plaintiffs but, rather, the Defendants.

264.    Through their use of the Plaintiff Investment Funds and the properties they purchased with these funds, Defendants have exercised dominion and control over personal property belonging to the Plaintiffs, thereby interfering with Plaintiffs' rights to same.

265.    As a direct and proximate result of this wrongful conversion, Plaintiffs have been damaged, and continue to be damaged, in an amount to be determined at trial.

266.    Plaintiffs are entitled to recover from Defendants damages and punitive damages and the disgorgement of profits in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION:  **UNJUST ENRICHMENT**

267.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the prior paragraphs as if fully set forth herein.

268.    Plaintiffs plead unjust enrichment as an alternative cause of action to conversion.

269.    Defendants have unjustly enriched themselves at Plaintiffs' expense by, inter alia, improperly taking Plaintiff Investment Funds to finance Mr. Strulovitch's lavish lifestyle and to purchase and develop the property for his personal property portfolio, rather than depositing the funds in the Holding LLC's accounts, and spending the funds as agreed on the Joint Venture Properties.

270.     As such, Defendants are wrongfully in possession of these monies and have received substantial benefits from the wrongful possession thereof.

271.     Equity and good conscience require that Defendants return the value of these monies to Plaintiffs.

272.     As a result of the foregoing, Defendants have caused and continue to cause damage to the Plaintiffs, in an amount to be proven at the trial.

273.     Plaintiffs are therefore entitled to compensatory and punitive damages and disgorgement in an amount to be determined at trial.

## NINTH CAUSE OF ACTION:  ACCOUNTING

274.     Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the prior paragraphs as if fully set forth herein.

275.     The breaches of fiduciary duty set forth above have damaged Plaintiffs.

276.     Mr. Strulovitch was at all relevant times, the manager of the Holding LLCs, and is in possession, of the books and records of the Holding LLCs.

277.     Upon information and belief, Mr. Strulovitch has refused to provide access to the books and records of the Holding LLCs.

278.     Plaintiffs are therefore entitled to an accounting of all of the books, records and transactions of Defendants pertaining to the subject properties, and for the recovery of any assets/monies that have been improperly stolen from them.

## TENTH CAUSE OF ACTION:  BREACH OF CONTRACT

279.     Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the prior paragraphs as if fully set forth herein.

280.     Mr. Strulovitch directly and through his agents sent Plaintiffs prospecti pertaining to various Joint Venture Properties.

281.   Each prospectus set forth the amount of equity investors would need to provide in order to facilitate the purchase and development of the Joint Venture Property.

282.   Each prospectus set forth that the equity would be returned to the investors and they would be given a 45% stake in a Holding LLC that would own the property.

283.   Each prospectus also listed various obligations upon the "entrepreneur" (Mr. Strulovitch").  Such obligations included:

)   Purchasing the Joint Venture Property

)   Repaying the equity to the investors before any profits are distributed

)   Renovating and developing the Joint Venture Property

)   Leasing the Joint Venture Property

284.   In addition, Mr. Strulovitch directly and through his agents, made oral and written representations to Plaintiffs as to the terms of the agreements governing the Joint Venture Properties.

285.   Plaintiffs ratified the mutual agreements set forth in the prospecti and in Defendants' oral and written representations, by wiring the requisite amount of funds as set forth in the prospecti and as set forth in the terms of the agreements contained in Defendants oral and written representations.

286.   The Strulovitch Defendants ratified the mutual agreements set forth in the prospecti and in their oral and written representations by accepting the funds requested in the prospecti.

287.   Each of the Joint Venture Property prospecti and/or Defendants' written and oral representations constituted a binding contract between the  Strulovitch Defendants and Plaintiffs.

288.   The  Strulovitch Defendants breached said contracts.

289.   Such breaches of contract include:

)   Failing to use the Plaintiff Investment Funds for the purposes set forth in the

prospecti.



⟩ Taking individual ownership of some of the Joint Venture Properties instead of placing the ownership under the relevant Holding LLC.

⟩ Failing to develop many of the Joint Venture Properties.

⟩ Failing to lease many of the Joint Venture Properties.

⟩ Failing to repay the equity to many of the Plaintiffs.

⟩ Failing to properly manage the Joint Venture Properties.

⟩ Saddling the Joint Venture Properties with inappropriate amounts of debt.

290.    With respect to the majority of the Joint Venture Properties listed herein, said breaches of contract typically began within a few days from when Plaintiffs wired funds to Mr. Strulovitch and/or CS,  and have continued to date.

291.     As a result of said breaches of contract, Plaintiffs have suffered economic losses amounting to many millions of dollars.

## 11th CAUSE OF ACTION: FRAUDULENT CONVEYANCE DCD § 273-274

292.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the prior paragraphs as if fully set forth herein.

293.    Plaintiffs became creditors of Defendants STRULOVITCH and CS, when they made fraudulent use of Plaintiffs' Investment Funds.

294.     Defendants STRULOVITCH and CS transferred Plaintiffs' Investment Funds and Joint Venture Properties without the fair exchange of consideration and in a manner that rendered them and/or the Holding LLCS insolvent.

295.    Defendants STRULOVITCH and CS transferred Plaintiffs' Investment Funds and Joint Venture Properties in a manner that left them and the HOLDING LLCs under-capitalized.

296.    As a result of the foregoing, said transfers were fraudulent.

297.    Plaintiffs are entitled to a judgment (i) having said transfers voided and/or set aside; (ii) allowing Plaintiffs to attach or levy execution upon the conveyed assets; (iii) awarding Plaintiffs the value of the conveyed assets; (iv) directing Defendants to turn over the transferred Plaintiffs' Investment Funds and Joint Venture Properties to Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment to include an accounting, damages, treble damages, punitive damages, constructive trusts, equitable liens, attorneys fees, and costs.


Dated: Brooklyn, New York
         September 4, 2020

Lazar Grunsfeld Elnadav LLP

By: _____/GG/_____
     Gerald Grunsfeld
     Attorneys for Plaintiffs
     1795 Coney Island Avenue
     Brooklyn, NY 11230
     (718) 947-7476
     Gerry@LGELaw.com