```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
SIMCHA FELDMAN, YECHIEL
SHUKRON, SHALOM KOLDETZKY, ARON
BENISHU, ISRAEL HODER, MEIR
FOGEL, RAPHAEL ARIEH, RACHAMIM
BERACHA, TZVI LEFKOVITZ, SHLOMO
KORITZ, TZVI ANSBACHER, RUCHAMA
TOLEDANO, RAPHAEL BITAN, NAOR
AMAR, ISRAEL BEN-EZRA, ARYEH
LEVI, ELCHANAN ELMISHALI, and
MEIR EDELSHTEIN,

                Plaintiffs,

        - against -

YECHEZKEL STRULOVITCH, CS
CONSTRUCTION GROUP LLC,
GLAUBERS CHASIDISHA CLOTHING
LLC, GLAUBERS QUALITY CLOTHING
LLC, GLAUBERS TRADITIONAL
CLOTHING LLC, 945 PARK PL LLC,
1078 DEKALB LLC, 74 VAN BUREN
LLC, 454 CENTRAL AVENUE LLC,
980 ATLANTIC HOLDINGS LLC, PENN
CONDIMINIUM LLC, THROOP HOME,
LLC, EIGHTEEN PROPERTIES LLC,
THE BUSHWICK PARTNERS LLC,
BROOKLYN VENTURES LLC, THE
HOWARD DAY HOUSE LLC, 196
ALBANY HOLDINGS L.P., CSN
PARTNERS LP, KNICKERBOCKER
LOFTS LLC, 1301 PUTNAM LLC, 741
LEXINGTON LLC, 296 COOPER LLC,
WILLTROUT REALTY LLC, STAGG
STUDIOS LLC, FIRST AVENUE
REALTY HOLDINGS L.P., CSY
HOLDINGS LLC, CAS MANAGEMENT
COMPANY BAYSHORE, INC., 31
BROOKLYN LLC, 1035 FLUSHING AVE
LLC, VICTORY BLVD ASSOCIATE
LLC, SOI GROUP LLC, 945
WILLOUGHBY HOLDINGS LLC, 119
HOLDINGS LLC, WALLACE HOLDINGS
LLC, 1642 EQUITIES LLC, BNH
```

**MEMORANDUM AND ORDER**

20 Civ. 7270 (NRB)

PROPERTIES LLC, HERMAN
GREENFELD as trustee of GIVAS
OLIM TRUST, MENDEL BRACH as
trustee of GIVAS OLIM TRUST,
TOMPKINS 420 REALTY LLC,
WILLOUGHBY EQUITIES LLC, 186
LENOX LLC, 400 SOUTH 2ND STREET
REALTIES L.P., WYKOFF SP LLC,
1428 FULTON ST LLC, PENN &
MARCY LLC, 420 TOMPKINS, LLC,
599-601 WILLOUGHBY LLC, CS YH
CONDOS LLC, LENOX 186 HOLDINGS
LLC, LENOX 186 REALTY LLC, 400
SOUTH 2ND STREET HOLDINGS L.P.,
R.P.S. PROPERTIES LLC, FULTON
STREET HOLDINGS LLC, 908 BERGEN
STREET LLC, 901 BUSHWICK AVENUE
LLC, GATES EQUITY HOLDINGS LLC,
853 LEXINGTON LLC, 348 ST.
NICHOLAS LLC, 762 WILLOUGHBY
LLC, 855 DEKALB AVENUE LLC, THE
BRIDGE TOWER LLC, 619 HOLDINGS
LLC, GRAND SUITES LLC, CATALPA
DEVELOPMENT, LLC, SLOPE OFFICES
LLC, 41-49 SPENCER LLC, 482-484
SENECA LLC, 1217 BEDFORD LLC,
1266 PACIFIC LLC, MYRTLINO
HOLDINGS, LLC, 259 BERRY LLC,
and 261 BERRY LLC,

                    Defendants.

------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


        This action was originally brought by eighteen plaintiffs[1]

---

[1]      Simcha Feldman, Yechiel Shukron, Shalom Koldetzky, Aron Benishu, Israel Hoder, Meir Fogel, Raphael Arieh, Rachamim Beracha, Tzvi Lefkovitz, Shlomo Koritz, Tzvi Ansbacher, Ruchama Toledano, Raphael Bitan, Naor Amar, Israel Ben-Ezra, Aryeh Levi, Elchanan Elmishali, and Meir Edelshtein.  Plaintiffs are citizens of Israel, France, the United Kingdom, and Austria.  TAC ¶ 10.

against seventy-three defendants, alleging that defendants engaged in a criminal and fraudulent enterprise that defrauded plaintiffs out of millions of dollars.  See Third Amended Complaint ("TAC") (ECF No. 69) ¶ 1.  With the exception of Yechezkel Strulovitch ("Strulovitch"), all of the defendants are limited liability corporations or limited partnerships.  Plaintiffs have entered into arbitration with forty-four defendants (the "stayed defendants"), including Strulovitch, and there is a formal stay in place with respect to the claims in arbitration.  See ECF Nos. 106, 109.

The motions before the Court are brought by three separate groups of the remaining defendants[2] (the "moving defendants") to dismiss the claims asserted in the TAC, filed on October 14, 2021, as well as to vacate related notices of pendency.  The motions, filed on October 14 and November 1, 2021, all raise the same arguments and plaintiffs do not suggest that the outcome should differ for any of the motions.  See ECF Nos. 70, 76, 80.  For the reasons stated below, the Court grants the moving defendants'

---

[2]     The moving defendants are: Fulton Street Holdings, 1428 Fulton St LLC, CSN Partners LP, 196 Albany Holdings LP, 400 South 2nd Street Realties LP, 400 South 2nd Street Holdings LP, First Avenue Realty Holdings LP, 186 Lenox LLC, Lenox 186 Holdings LLC, Lenox 186 Realty LLC, Eighteen Properties LLC, Knickerbocker Lofts LLC, Willtrout Realty LLC, Stagg Studios LLC, 420 Tompkins LLC, and Tompkins, 420 Realty LLC.  296 Cooper LLC originally moved to dismiss the TAC as well, but the Court granted its request to withdraw and enter arbitration, staying claims, on February 1, 2022.  See ECF No. 110.

motions to dismiss in their entirety and vacates the notices of pendency.

**BACKGROUND**[3]

**I.   The Purported Fraudulent Investment Schemes**

Defendant Strulovitch, against whom all claims are stayed, is at the heart of the alleged fraudulent schemes in this case and is the alleged owner and controller of the corporate defendants.  In the first half of 2014, Strulovitch and deceased non-party Yechiel Oberlander solicited investment funds from plaintiffs by sending them prospectuses for the purchases of four properties in Brooklyn, New York.  TAC ¶¶ 19, 31, 41, 52.  According to the TAC, these prospectuses contained numerous misrepresentations, including misrepresentations about actual purchase prices of the properties in question, projected profits, the existence of proper permits to operate businesses at subject properties, and the timeline to perform necessary renovations and development of the properties. Id. ¶¶ 21-23, 32-36, 43-45, 52, 57-65.  In reliance on these representations, plaintiffs wired nearly two million dollars to Strulovitch (the "Investment Funds").  Id. ¶¶ 3, 24, 36, 46, 53.

---

[3]    The following facts, which are drawn from the Third Amended Complaint, are accepted as true for the purposes of the Court's ruling on the moving defendants' motions to dismiss.  The Court draws all reasonable inferences in plaintiffs' favor.  See Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012).  We only summarize the relevant facts that are necessary to resolve these motions.

-4-

While plaintiffs allege that Strulovitch engaged in six "schemes" using the fraudulently obtained Investment Funds, the moving defendants are the subjects of only schemes two and three, which comprise 28 paragraphs of the 371-paragraph complaint. See TAC ¶¶ 189-217. According to the TAC, the second scheme involved the "fraudulent financ[ing]" of multiple properties using plaintiffs' Investment Funds in order to "build [Strulovitch's] personal property portfolio." Id. ¶¶ 189-90. Plaintiffs allege that Strulovitch formed a number of corporate entities, including some of the moving defendants, in order to take legal ownership of these properties. Id. ¶ 193. The third scheme involved the fraudulent transference of ownership of certain of Strulovitch's "personal properties" to additional corporate entities, including some of the other moving defendants, in order to "obscure Mr. Strulovitch's ownership of these properties." Id. ¶ 207.

According to the allegations in the TAC, all of the moving defendants are controlled or owned by Strulovitch and were utilized to engage in schemes two and three. Id. ¶ 210.

## II.  Additional Federal and State Actions

This action is the most recent in a series of cases brought by other investors against Strulovitch and his associates, including the moving defendants. All of the moving defendants

have previously been sued, some having been sued in federal court in the Eastern District of New York, while others were sued in New York State Supreme Court, and some were sued in both.  Claims for fraud and the relief sought in those cases parallel the claims and requested relief in the TAC.  We will briefly summarize the status and outcome of the other litigations.

    A. *Schonberg v. Strulovitch*

On April 10, 2017, a group of plaintiffs consisting of Israeli citizens and limited liability corporations with principal places of business in Brooklyn, New York filed a complaint in the Eastern District of New York against Strulovitch.  See Complaint, Schonberg v. Strulovitch, No. 17 Civ. 2161 (E.D.N.Y. Apr. 10, 2017), ECF No. 1 ("Schonberg Complaint"); Amended Complaint, Schonberg v. Strulovitch, No. 17 Civ. 2161 (E.D.N.Y. Apr. 24, 2017), ECF No. 9 at 15-16.  In addition to Strulovitch, the Schonberg Complaint named many of the defendants in this case, including some of the moving defendants.  Id.  The complaint also contained allegations similar to the TAC in our case, including that "defendants engaged in a multimillion dollar fraudulent real estate investment scheme that was allegedly orchestrated by defendants Yechezkel Strulovich and Yechiel Oberlander," in which investors were deceived "into investing in twenty-two parcels of real property in New York . .

-6-

. only for the Individual Defendants [Strulovitch and Oberlander] to secretly funnel a substantial portion of plaintiffs' money to themselves and their other properties." Memorandum and Order, Schonberg v. Strulovich, No. 17 Civ. 2161 (E.D.N.Y. Nov. 2, 2017), ECF No. 257 at 1 ("Schonberg M&O"). Plaintiffs also brought many of the same causes of action and requests for relief, including requests for an accounting and the imposition of constructive trusts, as well as a claim of unjust enrichment. Additionally, the complaint includes two schedules of Strulovitch "investment propert[ies]" and "secret propert[ies]," that attempt to establish the connections between the real property in the case and the interests held by the defendants. See Schonberg Complaint at 31-32.

On November 2, 2017, following a motion to compel arbitration, or in the alternative, to dismiss the complaint, the Court in Schonberg granted the motion to compel arbitration for those plaintiffs and defendants that had signed agreements containing arbitration clauses, dismissed federal securities claims brought by individual plaintiffs who had not agreed to arbitrate, and declined to exercise supplemental jurisdiction over any remaining state law causes of action. See Schonberg M&O.

B. *Angel v. Strulovitch*

-7-

On January 11, 2020, a separate group of plaintiffs from the United States, Israel, France, the United Kingdom, Switzerland, and Austria filed a case in New York Supreme Court, Kings County, against Strulovitch and his alleged associates.  See Complaint, Angel v. Strulovitch, No. 500827/2020 (N.Y. Sup. Ct. Jan. 11, 2020), ECF No. 1.  Once again, the complaint contained similar claims and involved many of the same defendants as in both the Schonberg case and the instant case, including all of the moving defendants.  Id.  On July 1, 2020, the court dismissed all claims against the corporate defendants in the case, other than a fraudulent conveyance claim against one corporate defendant, after they, along with Strulovitch, moved to dismiss the Amended Complaint.  See Angel v. Strulovich, No. 500827/20, 2020 WL 3791688 (N.Y. Sup. Ct. July 1, 2020).  Specifically, the court deemed plaintiffs' requests for the imposition of constructive trusts to be untimely and rejected plaintiffs' contention that constructive trusts can be imposed on properties that were improved, rather than purchased, with investment funds as lacking a legal basis.  Id. at *4-5.  The Court also dismissed RICO claims against the corporate defendants, finding that plaintiffs failed to demonstrate the existence of an enterprise, and dismissed the unjust enrichment claim as duplicative of the contract and tort

claims.  Id. at *6-9.  On December 2, 2020, the Court denied
plaintiffs' motion to reargue claims seeking to impose
constructive trusts.  See Angel v. Strulovich, No. 500827/20, 2020
WL 7059227 (N.Y. Sup. Ct. Dec. 2, 2020).  In this later opinion,
the Court noted that plaintiffs' "constructive trust claims are
rooted in and serve as a mechanism to recover claims for
conversion," and thus were subject to a three-year statute of
limitation applicable to conversion claims.  Id. at *3.

   *C. Zwebner v. Strulovitch*

  On September 1, 2020 a different group of plaintiffs from the
United States, Israel, France, the United Kingdom, and Austria
filed a complaint in Supreme Court, New York County, against
Strulovitch.  See Complaint, Zwebner v. Strulovitch, No.
654185/2020 (N.Y. Sup. Ct. Sept. 1, 2020), ECF No. 1.  As with the
prior complaints, this complaint contained nearly identical claims
and involved nearly all of the same defendants.  Id.  On June 25,
2021, the case was transferred to Kings County as related to the
Angel action.  See Zwebner v. Strulovitch, No. 645185/2020 (N.Y.
Sup. Ct.) ECF Nos. 113-116.  On January 27, 2022, the court
dismissed claims against the same moving defendants as in the
motions before us and vacated the related notices of pendency.
See Zwebner v. Strulovitch, No. 530498/2021, 2022 WL 445856 (N.Y.

Sup. Ct. Jan. 27, 2022).  The court found that plaintiffs could not impress a trust upon properties to which no promise had been made and to which they maintained no interest.  Id. at *3.  The Court also held that plaintiffs' conversion claims were barred by the statute of limitations.  Id. at *5.  Further, the Court found: that plaintiffs had failed to establish any relationship between plaintiffs and the moving defendants; that many of the claims, such as fraud and unjust enrichment, were duplicative of tort and contract claims; and that once again plaintiffs had failed to demonstrate the existence of an enterprise sufficient to establish a RICO claim.  Id. at *5-6.  On June 13, 2022, the court denied plaintiffs' motion to reargue certain unjust enrichment claims and denied defendants' motion for attorneys' fees and costs.  See Decision and Order, Zwebner v. Strulovitch, No. 530498/2021 (N.Y. Sup. Ct. June 13, 2022), ECF No. 231.

### III. Procedural Posture

On September 8, 2020, plaintiffs filed the Complaint in this litigation.  See ECF No. 1.  On September 15, 2020, plaintiffs filed an Amended Complaint, and on March 17, 2021 they filed a Second Amended Complaint.  See ECF Nos. 8, 46.  On May 12, 2021, plaintiffs filed notices of Lis Pendens for certain properties owned by some of the defendants, including the moving defendants.

See ECF No. 55.  On October 4, 2021, plaintiffs requested leave to file a Third Amended Complaint, which the Court granted, while providing that plaintiffs would not be permitted to amend another time.  See ECF Nos. 61, 65.  On October 14, 2021 and November 1, 2021, the moving defendants filed motions to dismiss the TAC and to vacate notices of pendency.  See ECF Nos. 70, 76, 80.  On January 18 and January 21, 2022, the Court granted motions to stay claims pending arbitration between the stayed defendants, including Strulovitch, and plaintiffs.  See ECF Nos. 106, 109.

## DISCUSSION

### I.  Plaintiffs' Claims are Time Barred

Given that plaintiffs have agreed to stay all of their claims against Strulovitch pending arbitration, it is unclear how any of the remaining claims can proceed while the stay is in effect since the TAC alleges that Strulovitch owns, controls, and/or formed and utilized the remaining defendants to effectuate his scheme to defraud.  However, since no party has raised this issue and we find that the moving defendants' motion has merit, we will address the motion as made.

As just described, similar claims filed by similarly situated plaintiffs against the moving defendants have been resolved by decisions in favor of the defendants in both federal and state

court.  See Schonberg M&O; Angel, 2020 WL 3791688; Zwebner, 2022
WL 445856.

Here, the moving defendants advance a number of arguments in
support their motions to dismiss.  The threshold argument they
advance is that the claims against them are untimely.  See, e.g.,
Memorandum of Law in Support of Defendants' Motion to Dismiss the
Third Amended Complaint and Vacate the Notices of Pendency ("CSN
Mot."), ECF No. 77 at 10.  According to the moving defendants, the
three-year statute of limitations applicable to conversion claims
should govern plaintiffs' claims, despite the longer six-year
statute of limitations that applies to the claims of constructive
trust, equitable lien, unjust enrichment, and accounting.  There
is no dispute between the parties as to the statute of limitations
applicable to each cause of action.  See Maya NY, LLC v. Hagler,
106 A.D.3d 583, 585 (N.Y. App. Div. 2013) ("An action for
conversion is subject to a three-year limitation period."); De
Laurentis v. De Laurentis, 47 A.D.3d 750, 751 (N.Y. App. Div. 2008)
("A cause of action to impose a constructive trust or equitable
lien is subject to a six-year limitations period."); Giraffe G4
Sys., LLC v. Measurement, Ltd., No. 17 Civ. 5334 (VB); 2018 WL
1801962, at *4 (S.D.N.Y. Apr. 13, 2018) ("The statute of
limitations for an unjust enrichment claim is generally six

years."); <u>Matter of Lee</u>, 153 A.D.3d 831, 833 (N.Y. App. Div. 2017) ("Claims for an accounting are subject to a six-year statute of limitations.").

Relying on the three-year statute of limitations for a conversion claim, moving defendants maintain that the action is untimely since the alleged misappropriation of funds occurred in 2014 and 2015, and this lawsuit was filed in September 2020—well after three years had elapsed. <u>See, e.g.,</u> CSN Mot. at 11. Defendants further argue that the doctrine of equitable estoppel relied on by plaintiffs to avoid a statute of limitations bar does not apply to prevent defendants from asserting their statute of limitations argument. <u>See, e.g.,</u> Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Third Amended Complaint and Vacate the Notices of Pendency, ("CSN Reply"), ECF No. 97 at 3-6.

      **a.** *Plaintiffs' Claims are Rooted in Conversion*

Moving defendants' primary argument is that, properly understood, plaintiffs assert a claim for conversion and as such all of their claims and remedies are time-barred. Where an action, in reality, "sound[s] in conversion," additional causes of action are subject to the "three-year Statute of Limitations applicable to conversion actions." <u>Gold Sun Shipping v. Ionian Transp.</u>, 245

-13-

A.D.2d 420, 421 (N.Y. App. Div. 1997); Kapernekas v. Brandhorst,
638 F. Supp. 2d 426, 428 (S.D.N.Y. 2009) (finding additional causes
of action to be duplicative where these causes of action "boil
down to an allegation that defendant[s] converted [plaintiffs'
funds] for [their] own benefit."). Moreover, plaintiffs cannot
avail themselves of the longer limitations periods of certain
equitable remedies where those remedies are premised on the same
subject-matter of a legal remedy with a shorter limitations period.
See Malmsteen v. Berdon, LLP, 477 F. Supp. 2d 655, 667 (S.D.N.Y.
2007) ("[I]f the unjust enrichment claim is merely incidental to
or duplicative of another claim with a shorter limitations period,
the Court will not allow a plaintiff to avail himself of the longer
limitations period."); Grosz v. Mus. Of Modern Art, 772 F. Supp.
2d 473, 481 (S.D.N.Y. 2010) ("[W]here, as here, both a legal and
an equitable remedy exists as to the same subject-matter, the
latter is under the control of the same statutory bar as the
former.")(quoting Keys v. Leopold, 241 N.Y. 189, 189 (N.Y. 1925)).

It is evident here that plaintiffs' equitable remedies and
causes of action are duplicative of, and rooted in, plaintiffs'
legal cause of action of conversion. See TAC ¶¶ 246-66
(constructive trust)("[Defendants] purchased/built/developed/paid
the mortgage on these properties, using (at least in part)

Plaintiffs' Investment Funds . . . [and should] immediately turn over these properties, together with all profits derived therefrom"); ¶¶ 270-76 (equitable lien) ("[Defendants] purchased/built/developed/paid the mortgage on the aforementioned properties, using (at least in part) Plaintiffs Investment Funds . . .[and] the Court [should] impose an equitable lien upon the aforementioned properties, in an amount that is at least equivalent to the amount of Plaintiff Investment Funds the [defendants] fraudulently spent on these properties/assets"); ¶ 342 (unjust enrichment) ("Plaintiffs plead unjust enrichment as an alternative cause of action to conversion"); ¶ 352 (accounting) ("Plaintiffs are therefore entitled to an accounting of all of the books, records and transactions of Defendants pertaining to the subject properties, and for the recovery of any assets/monies that have been improperly stolen from them").[4]  In essence, plaintiffs have asserted a series of remedies based around one cause of action.[5]

---

[4]     The state court in the <u>Angel</u> action reached the same result.  <u>See</u> <u>Angel</u>, 2020 WL 7059227 at *9 ("There can be little dispute that in this case the constructive trust claims are rooted in and serve as a mechanism to recover claims for conversion.").  The <u>Angel</u> court also noted that the constructive trust claim could be dismissed as duplicative of plaintiffs' legal claims.  <u>See</u> <u>Id.</u> at *4.  The same court in <u>Zwebner</u> also found that "[t]here is no dispute the conversion accrued more than three years before the commencement of the lawsuit."  <u>Zwebner</u>, 2022 WL 445856 at *5.

[5]     Plaintiffs acknowledge that their claim for the equitable remedy of unjust enrichment is duplicative of their conversion claim.
        Likewise, a constructive trust is "an equitable remedy."  <u>In re First Central Fin. Corp.</u>, 377 F.3d 209, 215-16 (2d Cir. 2004); <u>Anwar v. Fairfield Greenwich Ltd.</u>, 728 F. Supp. 2d 372, 419 (S.D.N.Y. 2010) ("A constructive trust

Plaintiffs make two arguments as to why their constructive trust and equitable lien claims do not have their origin in conversion: (1) defendants include separate arguments in their motions to dismiss regarding plaintiffs' conversion claim and constructive trust cause of action, thereby indicating that the request for the constructive trust is not "rooted" in conversion; and (2) the two claims are materially distinct because a conversion claim can only apply to personal property and can only recover the initial amount of stolen funds, rather than capturing any "development/appreciation" of the investment properties, which a constructive trust can do.  See, e.g., Plaintiffs' Memorandum of Law in Opposition to CSN Defendants' Motion to Dismiss/Cancel Notice of Pendency ("CSN Opp'n"), ECF No. 85 at 7-8.

Plaintiffs' first argument must be rejected.  Under the Federal Rules of Civil Procedure, parties can assert alternative, and even inconsistent, arguments and defenses in response to claims

---

is a remedy, not a cause of action, and is to be imposed only in the absence of an adequate remedy at law.") (internal quotation marks and citation omitted); but see Hughes v. BCI Int'l Holdings, Inc., 452 F. Supp. 2d 290, 309 (S.D.N.Y. 2006) ("[P]laintiffs have adequately plead [sic] a claim for constructive trust.").  "When a constructive trust extends only to a portion of the property, it is generally known as an equitable lien." Wilde v. Wilde, 576 F. Supp. 2d 595, 605 (S.D.N.Y. 2008).

Similarly, "[a]n accounting is an equitable remedy designed to require a person in possession of financial records to produce them, demonstrate how money was expended and return pilfered funds in his or her possession." Anderson v. Greene, No. 14 Civ. 10249 (KPF), 2016 WL 4367960, at *17 (S.D.N.Y. Aug. 10, 2016)(internal quotation marks and citation omitted).

in a complaint.  Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."), (d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").  Thus, defendants' argument that plaintiffs' conversion claim fails in its own right in no way undercuts the separate argument that the constructive trust claim is effectively "rooted" in conversion.

Plaintiffs' second argument, that their constructive trust is not duplicative of their conversion claim because a conversion claim will not capture any appreciation in the value of the investment properties, is both incorrect as a matter of law and is factually unsupported.  As a matter of law, when considering conversion of property of fluctuating value, "the damages are measured by considering the highest market value within a reasonable time after the plaintiff's discovery of the conversion."  Hoffman v. Dorner, 86 A.D.2d 651, 651 (N.Y. App. Div. 1982); Matter of Rothko, 56 A.D.2d 499, 503 (N.Y. App. Div. 1977) (holding that damages are considered "to the extent of the value of the item at the time of trial" where an item is "unique and irreplaceable.").  Therefore, the fact that an item, or property, could conceivably appreciate in value does not in and of

itself prevent a party from bringing a conversion claim. Plaintiffs thus cannot claim that their constructive trust claim is not duplicative of their conversion claim based on the possibility that some of the investment properties may have benefited from development by the defendants.

Moreover, plaintiffs fail to provide any reason that the Court should impose a constructive trust on any of the investment properties and thereby grant plaintiffs the benefits of any developments and the proceeds from any resulting sale. There is no indication that these properties were financed or improved solely through the use plaintiffs' funds, and there is strong evidence that other parties, including the plaintiffs of the Schonberg, Angel, and Zwebner cases, maintain an interest in the properties. Nor can plaintiffs know, or even claim to know, that the entirety of their Investment Funds was transferred to the moving defendants. As such, it would be problematic to grant plaintiffs a windfall by assigning all of the interest in these properties to plaintiffs via a constructive trust.

Given that the alleged misrepresentations and misuse of Investment Funds occurred in 2014 and 2015, plaintiffs' claims are untimely, as they were brought after the three-year statute of limitations applicable to conversion claims had expired.

## II.  Plaintiffs' Equitable Estoppel Argument

Plaintiffs rely on New York's doctrine of equitable estoppel, which applies to state law claims in federal court, to argue that the moving defendants are estopped from asserting a statute of limitations defense.  Twersky v. Yeshiva Univ., 993 F. Supp. 2d 429, 441 n.4 (S.D.N.Y. 2014) ("There is no question that the New York state doctrine of equitable estoppel is applicable to state-law causes of action in federal court.").  Equitable estoppel "applies where it would be unjust to allow a defendant to assert a statute of limitations defense because the defendant's affirmative wrongdoing . . . produced a long delay between the accrual of the cause of action and the institution of the legal proceeding."  Busher v. Barry, No. 20 Civ. 3587, 2021 WL 5071871, at *4 (2d Cir. 2021).  "It is, however, a doctrine to be invoked sparingly and only under exceptional circumstances."  Abercrombie v. Andrew Coll., 438 F. Supp. 2d 243, 265 (S.D.N.Y. 2006) (internal quotation marks and citation omitted).  The doctrine applies where a plaintiff "is induced by fraud, misrepresentation or deception to refrain from filing a timely action."  Zumpano v. Quinn, 6 N.Y.3d 666, 674 (N.Y. 2006).  A plaintiff must therefore "establish that subsequent and specific actions by defendants somehow kept [him or her] from timely bringing suit."  Putter v. North Shore

Univ. Hosp., 7 N.Y.3d 548, 552 (N.Y. 2006) (alteration in original) (internal quotation marks and citation omitted).

In response, the moving defendants argue that plaintiffs cannot estop them from asserting their statute of limitations arguments because: (1) the moving defendants did not themselves make misrepresentations to plaintiffs; (2) plaintiffs were placed on notice and failed to conduct adequate due diligence regarding their claims; and (3) the equitable estoppel claims were not pled with particularity and were duplicative of the underlying fraud claims.  While we disagree with the moving defendants' second argument, their first and third arguments are fatal to plaintiffs' equitable estoppel claim.  We examine each argument in turn.

First, plaintiffs fail to identify any misrepresentations made by the moving defendants, and all claims against Strulovitch, who allegedly communicated with plaintiffs, are stayed.  See TAC ¶¶ 1, 28, 38, 49, 176, 192-95, 205-10; CSN Opp'n at 5-6.  In fact, plaintiffs do not allege that they ever interacted with the moving defendants at any time prior to the filing of this lawsuit.  Plaintiff's failure is critical, since the doctrine of equitable estoppel requires proof that a defendant, "while knowing the true facts all along, makes a false representation or conceals a material fact with the intention that the other party will act

-20-

thereon." <u>Fuchs v. New York Blood Center, Inc.</u>, 275 A.D.2d 240, 241 (N.Y. App. Div. 2000).  Plaintiffs have not remotely fulfilled their obligations of pleading fraudulent representations by the moving defendants.   The TAC contains a plethora of pleading problems, not the least of which are the failure to define "Strulovich conspirators," the failure to identify which defendants made misrepresentations to plaintiffs, the absence of any information regarding what misrepresentations were allegedly made, and the lack of any proof that any misrepresentations were made with the intent to deceive plaintiffs.   Consequently, plaintiffs cannot invoke the doctrine of equitable estoppel.

The moving defendant's second argument is that plaintiffs were placed on notice such that they had a duty to conduct due diligence regarding their claims.  Under New York law, "[e]quitable estoppel will not toll a limitations statute . . . where a plaintiff possesses timely knowledge sufficient to place him or her under a duty to make inquiry and ascertain all the relevant facts prior to the expiration of the applicable Statute of Limitations." <u>Gleason v. Spota</u>, 194 A.D.2d 764, 765 (N.Y. App. Div. 1993).

The moving defendants argue that plaintiffs were placed on notice when deeds were publicly filed for the properties that

Strulovitch allegedly purchased with the Investment Funds, as well as for the investment properties listed in the prospectuses, which plaintiffs failed to examine.  See, e.g., CSN Opp'n at 5.  However, "[t]he mere fact that deeds had earlier been recorded [is] insufficient to constitute constructive notice of . . . conveyances in the absence of some knowledge that would have required plaintiffs to investigate the public records."  Guedj v. Dana, 11 A.D.3d 368, 368 (N.Y. App. Div. 2004).  Moving defendants do not identify any "knowledge" that would have triggered plaintiffs to search for these deeds, especially considering that plaintiffs disclaim any actual knowledge that Strulovitch was purchasing additional properties with, or otherwise misusing, their money. Plaintiffs would have had no reason to search for deeds owned by the moving defendants, as Strulovitch's relationship and alleged control over these companies was not readily available public information.  Further, even if plaintiffs found the deeds of properties purchased with the Investment Funds, they would not have been placed on notice of the alleged fraudulent scheme.  The moving defendants have no public identifying connections to Strulovitch, and the deeds do not contain information that would indicate that the property had been purchased with plaintiffs' money.

Similarly, although "public reports and lawsuits of alleged fraud are sufficient to put a plaintiff on inquiry notice of fraud," Aozara Bank, Ltd. v. Deutsche Bank Sec. Inc., 137 A.D.3d 685, 689 (N.Y. App. Div. 2016), the foreign plaintiffs in this case would have had no reason to search an American electronic court filing system for lawsuits filed against Strulovitch.  There is no indication that any of the prior lawsuits were the subject of any widespread media attention, and the Schonberg case appears to have only been reported on in local real estate news media.[6] Further, "the Court is aware of no authority placing the onus on an investor to monitor all court proceedings concerning its investments."  Wiedis v. Dreambuilder Investments, LLC, 268 F. Supp. 3d 457, 468 (S.D.N.Y. 2017) (quoting Girozentrale v. Tilton, 149 A.D.3d 152, 161 (N.Y. App. Div. 2017)).

Moving defendants' third argument is that plaintiffs have failed to plead their allegations of misrepresentations with particularity and thus have failed to identify misrepresentations that are separate and subsequent to the initial alleged fraudulent

---

[6]    See Strulowitz hit with $90M suit over alleged Brooklyn fraud scheme, THE REAL DEAL (Apr. 18, 2017) (https://therealdeal.com/2017/04/18/strulowitz-hit-with-90m-fraud-suit-over-alleged-brooklyn-ponzi-scheme/); Man Behind Williamsburg Waterfront Transformation Sued for Investor Fraud, dnainfo (Apr. 18, 2017) (https://www.dnainfo.com/new-york/20170418/bushwick/real-estate-landlord-tenant-housing-scam-investors/); Alleged Ponzi schemer Cheskel Strulowitz facing foreclosure on BK portfolio, THE REAL DEAL (Oct. 13, 2017) (https://therealdeal.com/2017/10/13/alleged-ponzi-schemer-cheskel-strulowitz-facing-foreclosure-on-bk-portfolio/).

scheme.

The only identified statements in the TAC that are pleaded with specificity are barred by the statute of limitations. See TAC ¶¶ 19-22, 32-34, 42-44, 52-54, 57-63. The TAC fails to identify any statements from Strulovitch or any other defendant that affected the timing of the filing of this case, nor does it provide information regarding when any alleged misrepresentations were made.[7] Instead, plaintiffs' repeat the same vague allegation throughout the TAC that Strulovitch and the "Strulovich conspirators" made "ongoing fraudulent misrepresentations" to plaintiffs. See TAC ¶¶ 28, 38, 176.

Given the ambiguous nature of these allegations, plaintiffs do not appear to allege any misrepresentations that are distinct from the underlying fraudulent scheme. Plaintiff's opposition papers attempt to expand the "ongoing fraudulent misrepresentations" made by Strulovitch. Yet, these "steps to

_____

[7]     There is some debate regarding whether a plaintiff asserting equitable estoppel must meet the requirements of Rule 9(b). See Fezzani v. Bear, Stearns & Co., Inc., No. 99 Civ. 793 (RCC), 2005 WL 500377, at *8 (S.D.N.Y. Mar. 2, 2005) ("Because Rule 9(b) applies to all averments of fraud, [plaintiff] must plead the fraudulent concealment on which their equitable estoppel allegations are based with particularity just as a federal-law plaintiff must."); Cf. Bild v. Konig, No. 09 Civ. 5576, 2011 WL 666259, at *6 (E.D.N.Y. Feb. 14, 2011) ("The equitable estoppel asserted by Plaintiff, however, while equitable in nature, is not a cause of action or a defense-it is rather an equitable bar to the assertion of the affirmative defense of statute of limitations . . . [a]ccordingly, Rule 9(b), governing pleadings, should not apply."). Here, plaintiffs' allegations are so insufficient that we need not resolve this debate.

conceal [the] fraud from Plaintiffs" consist of allegations that the defendants "lied to Plaintiffs on an ongoing basis inducing them to believe that their funds had been invested as promised" and "agree[d] to act as a front for Mr. Strulovitch's actual ownership of the CSN properties." CSN Opp'n at 5-6. However, this is nothing new. Rather, these are the exact same allegations pleaded in the TAC regarding the scheme two and three properties. See TAC ¶¶ 189-217.

In applying the doctrine of equitable estoppel "in cases where the alleged concealment consisted of nothing but defendants' failure to disclose the wrongs they had committed, [the New York Court of Appeals has] held that the defendants were not estopped from pleading a statute of limitations defense." Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 789 (N.Y. 2012). "The affirmative wrongdoing must be separate and apart from the underlying claim." Bobash, Inc. v. Festinger, 57 A.D.3d 464, 467 (N.Y. App. Div. 2008). Plaintiffs have therefore failed to assert an equitable estoppel claim and cannot save their untimely claims. Plaintiffs' vague allegations and the additional explanations provided in plaintiffs' opposition papers only reinforce the fact that plaintiff is "relying on the same underlying conduct that forms the basis of the substantive cause of action." Torrance

Constr., Inc. v. Jaques, 127 A.D.3d 1261, 1265 (N.Y. App. Div. 2015) (finding that equitable estoppel could not be applied where plaintiff did not identify subsequent acts of concealment or misrepresentations).

### III. Notices of Pendency

Given that a notice of pendency depends upon an action in which judgment would affect the title or possession of real property, see CPLR § 6501, we also vacate plaintiffs' notices of pendency for the real property owned by the moving defendants.

<b>CONCLUSION</b>

Accordingly, for the reasons stated above, we grant the moving defendants' motion to dismiss in their entirety and to vacate the notices of pendency.  The Clerk of Court is respectfully directed to terminate the motions pending at ECF Nos. 70, 76, and 80.

**SO ORDERED.**

Dated:   New York, New York
         August 17, 2022

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

-26-